Hillsborough-southern judicial district
No. 99-016

### NICHOLAS AND JODIANN IANNELLI, INDIVIDUALLY, AND AS p/n/f OF NICOLE, JEREMY & RENEE IANNELLI

v.

### BURGER KING CORPORATION

August 18, 2000

*Jordan, Maynard & Parodi, PLLC*, of Nashua (*Steven L. Maynard* on the brief and orally), for the plaintiffs.

*Backus, Meyer, Solomon, Rood & Branch*, of Manchester (*Robert A. Backus* on the brief and orally), for the defendant.

MCHUGH, J. The plaintiffs, Nicholas and Jodiann Iannelli, individually and on behalf of their three children, brought a negligence action against the defendant, Burger King Corporation, for injuries sustained as a result of an assault at the defendant's restaurant. The

plaintiffs appeal the Superior Court's (*Hampsey*, J.) grant of summary judgment in favor of the defendant. We reverse and remand.

The Iannellis brought an action alleging that they sustained injuries resulting from the defendant's breach of its duties to maintain its premises in a reasonably safe condition and to provide staffing, supervision, and protocols so that employees could reasonably and properly deal with foreseeable situations affecting the safety of patrons. While in the defendant's restaurant with his family, Nicholas Iannelli was assaulted by one or more unidentified persons. He alleges he received physical injuries, while his family, who witnessed the assault, alleges psychological damages. The trial court granted the defendant's motion for summary judgment, ruling that the defendant did not owe the Iannellis a duty of care to protect them from assault. The trial court reasoned that even considering all of the evidence in the light most favorable to the plaintiffs, there was no basis to conclude that the defendant could have foreseen the assault. This appeal followed.

Prior to issuing its ruling, the trial court reviewed the pleadings, the depositions of Nicholas and Jodiann Iannelli, as well as an affidavit of the restaurant manager. Those documents revealed the following facts. During the late afternoon or early evening hours of December 26, 1995, the Iannelli family went to the defendant's restaurant for the first time. Upon entering the restaurant, the Iannellis became aware of a group of teenagers consisting of five males and two females, whom they alleged were rowdy, obnoxious, loud, abusive, and using foul language. Some in the group claimed they were "hammered." Initially this group was near the ordering counter talking to an employee whom they appeared to know. The Iannellis alleged that one of the group almost bumped into Nicholas. When that fact was pointed out, the teenager exclaimed, "I don't give an F. That's his F"ing problem."

Nicholas asked his wife and children to sit down in the dining area as he ordered the food. While waiting for the food to be prepared, Nicholas joined his family at their table. The teenagers also moved into the dining area to another table. The obnoxious behavior and foul language allegedly continued. One of the Iannelli children became nervous. Nicholas then walked over to the group intending to ask them to stop swearing. As Nicholas stood two or three feet from the closest of the group, he said, "Guys, hey listen, I have three kids." Whereupon, allegedly unprovoked, one or more of the group assaulted Nicholas by hitting him, knocking him to the ground and striking him in the head with a chair.

Although the group was obnoxious and used foul language, they had not previously acted in a physically intimidating manner towards the Iannelli family. Prior to the assault, the plaintiffs did not report the group's behavior to the restaurant manager or ask him to take any action. The Iannellis were in the restaurant approximately fifteen to twenty minutes. The manager stated that he had worked at the restaurant for three years prior to the day in question and had never seen a customer attack another customer. He had no recollection of the group engaging in offensive conduct prior to the assault.

The plaintiffs argue that a commercial enterprise such as a restaurant has a general duty to exercise reasonable care toward its patrons, which may include a duty to safeguard against assault when circumstances provide warning signs that the safety of its patrons may be at risk. They also contend that the trial court erred by failing to analyze the pleadings and the facts to be offered at trial in the light most favorable to them.

The defendant invoked the summary judgment statute in an effort to have this case dismissed prior to trial. *See* RSA 491:8-a (1997). While summary judgment can at times be a useful avenue to pursue in order to eliminate baseless claims from costly litigation, trial courts must be wary of its application. Its most effective use is in breach of written contract or debt cases. *See* 73 AM. JUR. 2D *Summary Judgment* § 4 (1974). It becomes less effective in tort cases where there are generally more disputed issues of fact. *See id.* § 6. We have ruled, however, that the statute can be called upon to dismiss some negligence actions. *See Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 306, 605 A.2d 208, 214 (1992); *Arsenault v. Willis*, 117 N.H. 980, 984, 380 A.2d 264, 266 (1977). Yet we have also made it clear that "[a]lthough the statute is designed to reduce unnecessary trials, it is not intended that deserving litigants be cut off from their day in court." *Coburn v. First Equity Associates*, 116 N.H. 522, 524, 363 A.2d 402, 404 (1976).

 Summary judgment affords savings in time, effort and expense by avoiding a full trial under certain circumstances. The value of judicial economy may not be gained, however, at the expense of denying a litigant the right of trial where there is a genuine issue of material fact to be litigated. Consequently, RSA 491:8-a, III places on the moving party the burden of showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Moreover,

the reviewing court must consider the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence.

*Concord Group Insurance Co's. v. Sleeper*, 135 N.H. 67, 69, 600 A.2d 445, 446 (1991) (quotations and citations omitted). The trial court cannot weigh the contents of the parties' affidavits and resolve factual issues. *See Salitan v. Tinkham*, 103 N.H. 100, 102, 166 A.2d 115, 117 (1960). It must determine whether a reasonable basis exists to dispute the facts claimed in the moving party's affidavit at trial. If so, summary judgment must be denied. *Omiya v. Castor*, 130 N.H. 234, 238, 536 A.2d 194, 196 (1987).

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537, 703 A.2d 890, 892 (1997). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation and brackets omitted). We review the trial court's application of the law to the facts *de novo. See id.*

Under New Hampshire law, "whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law." *Manchenton*, 135 N.H. at 304, 605 A.2d at 213 (1992). In large part our definition and application of the legal concepts of duty and foreseeability derive from Chief Justice Cardozo's majority opinion in *Palsgraf v. Long Island Railroad Company*, 162 N.E. 99 (N.Y. 1928). With respect to landowners, we have long held that owners and occupiers of land are governed by the test of reasonable care under all of the circumstances in the maintenance and operation of their property. *See, e.g., Tanguay v. Marston*, 127 N.H. 572, 577, 503 A.2d 834, 837 (1986); *Ouellette v. Blanchard*, 116 N.H. 552, 553, 364 A.2d 631, 632 (1976); *Sargent v. Ross*, 113 N.H. 388, 397, 308 A.2d 528, 534 (1973).

█ A duty exists on the part of a landowner when it is foreseeable that an injury might occur as a result of the landowner's actions or inactions. "Generally, persons will not be found negligent if they could not reasonably foresee that their conduct would result in an injury to another or if their conduct was reasonable in light of the anticipated risks. Thus, duty and foreseeability are inextricably bound together." *Manchenton*, 135 N.H. at 304, 605 A.2d at 213

(citation, quotation, and brackets omitted); *see also Paquette v. Joyce*, 117 N.H. 832, 837, 379 A.2d 207, 209 (1977). In this case, the question becomes, could the defendant have anticipated a risk of injury to the plaintiffs when other patrons were engaged in offensive conduct for a measurable period of time? We answer that question in the affirmative.

The most instructive case, given the issues presented, is *Walls v. Oxford Management Co.*, 137 N.H. 653, 633 A.2d 103 (1993). In *Walls*, a tenant of an apartment complex alleged that the owner's negligent maintenance of its property allowed her to be subjected to a sexual assault in the parking lot. We held that as a general principle landlords have no duty to protect tenants from criminal attacks. Inasmuch as landlords and tenants have a special relationship that does not exist between a commercial establishment and its guests, it follows that the same general principle of law extends to restaurants and their patrons. *See, e.g., Ahrendt v. Granite Bank*, 144 N.H. 308, 314, 740 A.2d 1058, 1063 (1999) (declining to hold that relationship between bank and its ordinary customer gave rise to special duty to protect customer from fraud). We recognized in *Walls*, however, that particular circumstances can give rise to such a duty. These circumstances include when the opportunity for criminal misconduct is brought about by the actions or inactions of the owner or where overriding foreseeability of such criminal activity exists.

Viewing the evidence in the light most favorable to the plaintiffs, we must decide whether the behavior of the rowdy youths could have created an unreasonable risk of injury to restaurant patrons that was foreseeable to the defendant. If the risk of injury was reasonably foreseeable, then a duty existed. We hold that the teenagers' unruly behavior could reasonably have been anticipated to escalate into acts that would expose patrons to an unreasonable risk of injury. The exact occurrence or precise injuries need not have been foreseen.

Viewed in a light most favorable to the plaintiffs, the evidence could support a finding that the teenagers' obnoxious behavior in the restaurant was open and notorious. Because the group was engaging in a conversation at times with a restaurant employee, it could be found that the defendant was aware of the teenagers' conduct. The near physical contact between one teenager and Nicholas Iannelli at the counter and the indifference expressed by the group member thereafter could be deemed sufficient warning to the restaurant manager of misconduct such that it was incumbent upon him to take affirmative action to reduce the risk of injury. The plaintiffs allege

that at least one other restaurant patron expressed disgust with the group's actions prior to the assault. The manager could have warned the group about their behavior or summoned the police if his warnings were not heeded.

■ In summary, the trial court's ruling that as a matter of law the defendant owed no duty to the plaintiffs to protect them from the assault was error. While as a general principle no such duty exists, here it could be found that the teenagers' behavior in the restaurant created a foreseeable risk of harm that the defendant unreasonably failed to alleviate. Accordingly, we reverse and remand.

*Reversed and remanded.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GROFF, J., superior court justice, specially assigned under RSA 490:3, was recused and did not sit; GRAY, J., retired superior court justice, and MCHUGH, superior court justice, sat by special assignment pursuant to RSA 490:3; all who sat concurred.

Justices who did not sit did not, following oral argument, participate in discussions, decisions, votes, or preparation of the opinion in any way.