Hillsborough–southern judicial district
No. 2003-779

## HOLLY BERRY & a.

### v.

## WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. & a.

Argued: October 20, 2004
Opinion Issued: July 15, 2005

*Gawryl & MacAllister*, of Nashua (*Jared O'Connor* on the brief), and *Marci A. Hamilton*, of Washington Crossing, Pennsylvania, orally, for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Donald E. Gardner* and *Brian J.S. Cullen* on the brief, and *Mr. Gardner* orally), and *Robert C. James*, of Patterson, New York, on the brief, for defendants Watchtower Bible & Tract Society of New York, Inc. and Wilton Congregation of Jehovah's Witnesses.

BRODERICK, C.J. The plaintiffs, Holly Berry and Heather Berry, appeal orders of the Superior Court (*Groff*, J.) dismissing their claims. We affirm.

I

The plaintiffs brought an action for damages against the defendants, Watchtower Bible & Tract Society of New York, Inc. (Watchtower); the Wilton Congregation of Jehovah's Witnesses (Wilton Congregation); and their father, Paul Berry, for injuries from sexual and other abuse allegedly committed by Berry. Although it is unclear from the record whether Berry remains a defendant, he is not involved in this appeal.

The plaintiffs' claims against Watchtower and Wilton Congregation are based upon allegations that their mother, Sara Poisson, informed certain elders of the Wilton Congregation about the purported abuse, and that they failed to report it to law enforcement authorities and improperly counseled Poisson about how she should handle the alleged abuse. Specifically, the plaintiffs alleged that Watchtower and Wilton Congregation were negligent in failing to report the suspected abuse (Count I); breached their fiduciary duties by failing to report it (Count II); breached their common law duties by failing to report the abuse as required by RSA 169-C:29 (2002) (Count III); and engaged in willful concealment of the abuse (Count IV).

Watchtower and Wilton Congregation moved for summary judgment on all claims, asserting, among other things, that: (1) the religious privilege identified in RSA 516:35 (1997) and New Hampshire Rule of Evidence 505 (Rule 505) precluded them from making disclosure of any confidential information obtained from the plaintiffs' parents; (2) they had no common law or fiduciary duty to protect the plaintiffs from abuse; and (3) the reporting statute, RSA 169-C:29, did not create a private right of action.

Relying upon *Marquay v. Eno*, 139 N.H. 708 (1995), the trial court ruled that RSA 169-C:29 did not create a private right of action and that the elders did not owe the plaintiffs any fiduciary duty. The trial court, however, concluded that Watchtower and Wilton Congregation did have a common law duty to protect the plaintiffs from abuse. Finally, with regard to the reporting statute, the trial court ruled that it applied to "any other person," and thus applied to Watchtower and Wilton Congregation.

Following an evidentiary hearing, the court ruled that the elders were ordained ministers for purposes of Rule 505 and that the matters discussed with them by the plaintiffs' mother were "of such a nature that the discussions [were] subject to the requirement of confidentiality." The court concluded that "[w]ithout the waiver of both Ms. Poisson and Mr. Berry, the Elders [were obligated to] maintain the privilege and [could not] disclose any information." Because Rule 505 requires confidentiality, the court determined that Watchtower and Wilton Congregation did not have a duty to report or disclose the alleged abuse, despite the requirements of the reporting statute. Accordingly, the court ruled that "to the extent the plaintiffs' claims of negligence are premised on the duty of the defendants to report the allegations or admissions of child abuse, [their] action [is] dismissed."

In November 2003, the trial court ruled that all conduct complained of by the plaintiffs, whether sounding in common law negligence or deceit, fell under the heading of "clerical malpractice" and that it would be a violation of the Establishment Clause of the First Amendment for the court to "review and interpret church law, policies, or practices in the determination of the claims." (Quotation omitted.) Accordingly, all remaining claims against Watchtower and Wilton Congregation were dismissed. This appeal followed.

## II

The plaintiffs raise several issues, including: (1) whether the elders in the Wilton Congregation were required to report the alleged abuse pursuant to the child abuse reporting statute, RSA 169-C:29; (2) whether Jehovah's Witness elders are "clergy" for purposes of the evidentiary religious privilege, see RSA 516:35; N.H.R. Ev. 505; (3) whether the religious privilege applies when the communication is a non-private communication made in the presence of third parties; (4) whether Watchtower and Wilton Congregation owe a common law duty to the plaintiffs to take remedial action to protect them; (5) whether the reporting statute supersedes the religious privilege; (6) whether an inquiry into the conduct of Watchtower and Wilton Congregation to discover those actions taken in relation to the plaintiffs' alleged abuse violates the religious privilege; and (7) whether such an inquiry violates the Establishment Clause's rule against judicial intervention in ecclesiastical disputes.

Some of the plaintiffs' claims were disposed of by summary judgment and some were dismissed by the trial court. "In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the

non-moving party." *Sandford v. Town of Wolfboro,* 143 N.H. 481, 484 (1999) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotations and brackets omitted). In reviewing the trial court's grant of a motion to dismiss, "our task is to ascertain whether the allegations pleaded in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery." *Rayeski v. Gunstock Area,* 146 N.H. 495, 496 (2001) (quotation omitted). "We assume all facts pleaded in the plaintiff's writ are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor." *Id.* "We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law." *Id.* (quotation omitted).

## III

Sara Poisson and Paul Berry were married in 1980 and moved to Greenville in 1984. Poisson's daughter, Holly, was born of a prior marriage in 1978. Poisson and Berry's daughter, Heather, was born in 1982. Both Poisson and her husband were practicing Jehovah's Witnesses.

In the Jehovah's Witness faith, elders are selected by the governing body of the local congregation to be the congregation's spiritual leaders. Elders are lay people who do not have any formal religious training or education. They hold secular employment and are not compensated for their work as elders. As elders they are responsible for meeting with individual members of the congregation when requested to do so and working with them to identify problems and provide spiritual counsel. In the Wilton Congregation, at any given time, there were five to ten elders.

The plaintiffs allege that Poisson approached the elders seeking spiritual advice because she and her husband were having marital problems, which included verbal, mental and physical abuse. In response to her requests, the elders provided the couple with spiritual advice and assistance, which included joint prayers, Bible readings, and discussion of the Scriptures for application to their identified problems. According to Poisson, she reported to the elders on ten to twelve separate occasions that her husband was abusing their children. The plaintiffs further allege that "[i]n accord with directions to publishers, policies and practices of the organization of Jehovah's Witnesses, the elders ... told the Plaintiffs' mother she should keep the matter within the organization of Jehovah's Witnesses." In 2000, Berry was convicted of sexually assaulting Holly when she was a young child. *State v. Berry,* 148 N.H. 88 (2002).

## IV

The plaintiffs argue that the plain language of RSA 169-C:29 required elders of the Wilton Congregation to report the suspected child abuse to law enforcement authorities. Watchtower and Wilton Congregation argue that the plaintiffs presented no evidence that the elders had reason to suspect sexual abuse or physical injury and further that RSA 169-C:29 does not provide a civil remedy for their failure to report suspected abuse.

RSA 169-C:29 provides:

> Any physician, surgeon, county medical examiner, psychiatrist, resident, intern, dentist, osteopath, optometrist, chiropractor, psychologist, therapist, registered nurse, hospital personnel ... , Christian Science practitioner, teacher, school official, school nurse, school counselor, social worker, day care worker, any other child or foster care worker, law enforcement official, priest, minister, or rabbi or any other person having reason to suspect that a child has been abused or neglected shall report the same in accordance with this chapter.

An "abused child" includes children who have been sexually abused, or physically or psychologically injured. RSA 169-C:3 (2002). The trial court held that

> to the extent the plaintiffs' claims of negligence are premised on the duty of the defendants to report the allegations or admissions of child abuse, the plaintiffs' action must be dismissed. The Elders were barred by the Religious Privilege from disclosing any of the allegations or admissions to anyone and thus no duty to report the allegations could have arisen.

We concur with the trial court that the child abuse reporting statute does not give rise to a civil remedy for its violation. Failure to comply with the statute is a crime and "[a]nyone who knowingly violates any provision ... [is] guilty of a misdemeanor." RSA 169-C:39. The reporting statute does not, however, support a private right of action for its violation. *Marquay*, 139 N.H. at 715. Even assuming, without deciding, that the elders had an obligation to report suspected child abuse to law enforcement authorities, the plaintiffs have no cause of action for damages based on the elders' failure to do so. Accordingly, we need not decide whether Jehovah's Witness elders qualify as "clergy" for purposes of the evidentiary religious privilege.

## V

The plaintiffs further contend that Watchtower and Wilton Congregation had a common law duty to take remedial action to protect the plaintiffs due to a special relationship, a fiduciary relationship and/or the special circumstances of this case. While acknowledging that, in general, a person has no affirmative duty to aid others, the trial court analogized this case to the limited circumstances in which a person has a duty to prevent foreseeable harm to a third party and applied a balancing test to determine whether such a duty should be placed on Watchtower and Wilton Congregation. Under the facts of this case, the court declared that such a duty placed "little burden" upon them, requiring "only common sense advice to the church member and a reporting of the abuse to the authorities." The trial court concluded that the social importance of protecting the plaintiffs from sexual abuse outweighed the importance of immunizing the defendants from extended liability.

■ Whether a duty exists in a particular setting is a question of law. *Iannelli v. Burger King Corp.*, 145 N.H. 190, 193 (2000). "Absent a duty, there is no negligence." *Walls v. Oxford Management Co.*, 137 N.H. 653, 656 (1993). Recognizing the "fundamental unfairness of holding private citizens responsible for the unanticipated criminal acts of third parties," *Remsburg v. Docusearch*, 149 N.H. 148, 153-54 (2003), this court has identified three limited exceptions to the general rule that citizens have no such duty at common law: (1) where there is a special relationship between the parties; (2) where special circumstances exist including situations where the defendant's acts create an "especial temptation and opportunity" for the criminal misconduct; or (3) where the duty is voluntarily assumed. *Id.* The plaintiffs argue that the first two of these exceptions apply here. We disagree.

The plaintiffs argue that a special relationship existed between them and Watchtower and Wilton Congregation because "[they] and their family were members of the Wilton Congregation and relied to their detriment on elders of the congregation for moral, spiritual and practical guidance." In addition, the plaintiffs argue that "knowing that [Jehovah's Witness] adherents were admonished not to speak to secular authorities upon the pains of disfellowship, Defendants in this case facilitated 'an especial temptation and opportunity for criminal misconduct' by refusing to report the abuse themselves."

Under the RESTATEMENT (SECOND) OF TORTS § 314A (1965), "special relationships" giving rise to a duty to aid or protect individuals from the criminal acts of others "are those of common carrier/passenger, innkeeper/guest, landowner/invitee and one who is required by law to take

or who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection." *Dupont v. Aavid Thermal Technologies*, 147 N.H. 706, 710 (2002) (quotation, ellipsis, and brackets omitted). "The relation of the parties determines whether any duty to use due care is imposed by law upon one party for the benefit of another. If there is no relationship, there is no duty." *Guitarini v. Company*, 98 N.H. 118, 119 (1953) (quotation omitted).

In *Marquay*, a special relationship between students and certain school employees giving rise to a duty of care was recognized because of the compulsory character of school attendance, the expectation of parents and students for and reliance upon a safe school environment and the general importance to society of education. *Marquay*, 139 N.H. at 717. In this case there are none of the same considerations. Church attendance is not compulsory. There is no allegation that Berry's alleged abusive acts took place on congregation property or during congregation-related activities. There is no allegation that the plaintiffs were under the custody or control of Watchtower or Wilton Congregation at any time. *See Meyer v. Lindala*, 675 N.W.2d 635, 640 (Minn. Ct. App. 2004) (rejecting claim that control premised on faith-based advice creates a special relationship). In fact, the evidence is that the plaintiffs were at all times under the custody and protection of their parents.

█ There are no factors present that establish any special relationship between the plaintiffs and Watchtower or Wilton Congregation. *See Roman Catholic Bishop v. Superior Ct.*, 50 Cal. Rptr. 2d 399, 406 (Ct. App. 1996) (no special relationship exists between a church and its parishioners). "The creation of an amorphous common law duty on the part of a church or other voluntary organization requiring it to protect its members from each other would give rise to both unlimited liability and liability out of all proportion to culpability." *Bryan R. v. Watchtower Bible & Tract Soc.*, 738 A.2d 839, 847 (Me. 1999) (quotation omitted), *cert. denied*, 528 U.S. 1189 (2000) (parishioner's allegation that he was sexually assaulted by an adult church member when he was a child did not establish special relationship with church despite fact that elders knew of the abuse). We decline to hold that the fact of church membership or adherence to church doctrine by the plaintiffs' parents creates a special relationship between the plaintiffs and Watchtower or Wilton Congregation.

█ We also disagree with the plaintiffs' assertion that special circumstances exist in this case such that an especial temptation and opportunity for Berry's criminal misconduct was created by Watchtower and Wilton Congregation. There is no allegation that the elders created

any opportunity for Berry to abuse his daughters. As noted, there was no allegation that the alleged abuse took place on congregation property or at congregation-related activities. There is no allegation that the elders acted in any way other than by providing spiritual guidance and scriptural advice, at the request of the plaintiffs' mother. We hold that the plaintiffs have failed to establish either a special relationship with the defendants or that special circumstances existed in which Watchtower and Wilton Congregation created an especial temptation for criminal conduct by Berry. Consequently, there is no common law duty running from Watchtower and Wilton Congregation to the plaintiffs and the trial court's ruling that a duty existed requiring Watchtower and Wilton Congregation to dispense "common sense advice to the church member and a reporting of the abuse to the authorities" is erroneous as a matter of law.

The special circumstances exception should never be triggered by the mere failure of a citizen to report actual or suspected criminal conduct to law enforcement authorities or by a citizen's improper advice concerning an appropriate response to complaints of criminal activity. Otherwise, the general rule which imposes no duty on citizens to prevent the criminal acts of third parties will be swallowed up and civil liability unreasonably extended. The dissent suggests that if the elders had counseled Poisson to report the abuse to secular authorities they would have satisfied their common law duty to the plaintiffs, even if Poisson did not follow their advice. Apparently, knowledge by the elders of alleged criminal conduct and a failure to report it would not be sufficient to create civil liability but failure to dispense proper advice to the person disclosing the conduct would be. Poisson, however, had her own independent and overarching duty to protect her children from abuse perpetrated by her husband and had a common law obligation to intervene regardless of any advice she received. No special circumstances exist in this case to justify civil liability against Watchtower or Wilton Congregation.

In both *Iannelli* and *Remsburg*, on which the dissent relies, the defendants were engaged in commercial activity and were held to have a duty to prevent foreseeable criminal activity directed either to patrons on their premises or to individuals about whom they were selling otherwise private or hard-to-gather information. In both cases the defendants exercised control, either over commercial property or information they sold to third parties. Their activities and conduct created a condition or enhanced a foreseeable risk of criminal conduct which they could independently and affirmatively control. *Ianelli*, 145 N.H. at 193-95; *Remsburg*, 149 N.H. at 153-55. The same was true in *Dupont*, where workplace supervisors allegedly did not act appropriately in protecting an

employee from a criminal attack on workplace premises. *Dupont*, 147 N.H. at 713-14.

In the case before us, the elders were not similarly situated. They, in their roles as church leaders, learned of alleged criminal activity happening on property Wilton Congregation did not own or control and occurring solely between family members. The elders did not create the risk of harm to the children nor control its cessation or continuation. Although their positions in the Wilton Congregation invested them with a strong moral obligation to do all reasonably possible to stop the abuse, it would be inappropriate to transform a moral obligation into a common law duty.

The common law narrowly defines those responsible civilly for failure to prevent criminal assaults by third parties. If mere knowledge of alleged criminal conduct or imprudent advice offered in response to a disclosure or discovery can create a "special circumstance," then close friends, neighbors and extended family will find themselves at risk of civil liability for situations they did not create and over which they exercise no control. Without sufficient control that would give rise to a duty, a private citizen should be immune from civil liability for failure to prevent criminal acts of others.

RSA 169-C:29 requires certain persons to report suspected child abuse to law enforcement authorities. While we are not called upon here to determine the extent of that requirement, this is generally a sufficiently effective mechanism to protect victims and it would be unwise to expand the current limits of civil liability imposed upon private citizens to effect what the criminal law already requires.

■ Finally, the plaintiffs argue, in reliance on *Marquay v. Eno*, that Watchtower and Wilton Congregation owed them a fiduciary duty of care when the elders became aware of the purported abuse by their father. We do not agree that *Marquay* identified a fiduciary duty. Rather, we held that the school was liable for the criminal acts of certain of its employees because the school had breached a common law duty based upon the principle that "schools share a special relationship with students entrusted to their care." *Marquay*, 139 N.H. at 717. Nothing in the record indicates that the plaintiffs here were entrusted to the care of Watchtower or Wilton Congregation. Rather, the plaintiffs' allegations are based upon their parents' relationship with the elders and communications between their parents and the elders. "A fiduciary relationship ... exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." *Schneider v. Plymouth State College*, 144 N.H. 458, 462 (1999) (quotation omitted). As the trial court recognized, the plaintiffs did

not allege that the elders acquired influence over them or that their confidence had been reposed in the elders and that "[w]ithout these basic facts, there can be no fiduciary relationship." We agree.

Because we hold that Watchtower and Wilton Congregation have no common law duty to protect the plaintiffs and that the plaintiffs may not bring a private cause of action for the alleged failure of the elders to comply with RSA 169-C:29, we affirm the trial court's dismissal of the plaintiffs' action, albeit for different reasons. We need not, therefore, address the remaining arguments.

*Affirmed.*

NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., concurred in part and dissented in part.

DALIANIS, J., concurring in part and dissenting in part. While I agree with the majority that the reporting statute, RSA 169-C:29 (2002), does not give rise to a civil remedy for its violation, and that there was no fiduciary relationship between the plaintiffs and the defendants, I disagree with its conclusion that defendant Wilton Congregation of Jehovah's Witnesses (Wilton Congregation) had no common law duty towards the plaintiffs. I, therefore, respectfully dissent from that part of the majority opinion.

In *Walls v. Oxford Management Co.*, 137 N.H. 653, 658 (1993), we elucidated four exceptions to the general rule that individuals are not responsible for the criminal attacks of others: (1) when there is a special relationship; (2) where the defendant creates an especial temptation and opportunity for criminal misconduct, also called the special circumstances exception, *see Remsburg v. Docusearch*, 149 N.H. 148, 154 (2003); (3) the existence of overriding foreseeability; and (4) when one voluntarily assumes the duty. *Walls*, 137 N.H. at 658-59. Although we rejected the prospect of liability based upon the overriding foreseeability exception in that case, *id.* at 659, we arguably relied upon it in *Iannelli v. Burger King Corp.*, 145 N.H. 190, 194 (2000), where we found a commercial establishment had a duty to protect a customer from the criminal conduct of a group of patrons, in this case assault, because the group's behavior leading up to the assault created a foreseeable risk of harm.

In *Dupont v. Aavid Thermal Technologies*, 147 N.H. 706, 709 (2002), we listed only three exceptions to the general rule that a private citizen has no duty to protect others from the criminal attacks of third parties, excluding the overriding foreseeability exception, though we did so while citing the *Iannelli* case, which arguably relied upon that exception. Most recently, in *Remsburg v. Docusearch*, we again did not specifically address the overriding foreseeability exception, but explained that the general rule

was "grounded in the fundamental unfairness of holding private citizens responsible for the *unanticipated* acts of third parties . . . ." *Remsburg,* 149 N.H. at 154 (emphasis added).

The decision in *Remsburg* merges what once was the overriding foreseeability exception with the special circumstances exception, which includes situations where there is an especial temptation and opportunity for criminal misconduct brought about by the defendant. This exception follows from the rule that a party who realizes or should realize that his conduct has created a condition which involves an unreasonable risk of harm to another has a duty to exercise reasonable care to prevent that risk from occurring. "Where the defendant's conduct has created an unreasonable risk of criminal misconduct, a duty is owed to those *foreseeably* endangered." *Id.* (emphasis added).

The status of the overriding foreseeability exception in our case law is not clear. I note, however, that the foreseeability of harm has *at least* been incorporated into our liability analysis through the special circumstances exception. *See Remsburg,* 149 N.H. at 154. Other courts have also used foreseeability as a factor in a separate analysis to determine the existence of a duty. *See, e.g., Tarasoff v. Regents of University of California,* 551 P.2d 334, 342 (Cal. 1976); *Juarez v. Boy Scouts of America, Inc.,* 97 Cal. Rptr. 2d 12, 29 (Ct. App. 2000); *Doe v. Franklin,* 930 S.W.3d 921, 927 (Tex. App. 1996); *Babula v. Robertson,* 536 N.W.2d 834, 837 (Mich. Ct. App. 1995); *Solano v. Goff,* 985 P.2d 53, 54 (Colo. Ct. App. 1999); *McGlynn v. Newark Parking Authority,* 432 A.2d 99, 104 (N.J. 1981); *see also* RESTATEMENT (SECOND) OF TORTS § 302 B at 88 (1965). Thus, the rule that duty and foreseeability are inextricably bound together, *Manchenton v. Auto Leasing Corp.,* 135 N.H. 298, 304 (1992), retains some force even when we are faced with criminal acts perpetrated by third parties.

We review motions to dismiss to determine if the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. We then engage in a threshold inquiry that tests the facts in the writ against the applicable law. In so doing, we assume the truth of all well-pleaded facts alleged by the plaintiff, construing all inferences in the light most favorable to the plaintiff. *Dupont,* 147 N.H. at 709.

The plaintiffs allege the following facts. Holly Berry was born on December 13, 1978; she was physically and sexually abused by Paul Berry from 1983 until 1989. Heather Berry was born on May 27, 1982; she was physically and sexually abused by Paul Berry between the ages of three and six.

The Jehovah's Witness faith encourages its members to report problems among members of the congregation to elders within the organization, and not to secular authorities. During the period when the physical and sexual

abuse was occurring, Sara Poisson made ten to twelve reports to the elders of the Wilton Congregation that her husband was abusing her daughters, the plaintiffs. The elders scheduled meetings with Poisson and Paul Berry to counsel them about the problems they were experiencing in their marriage. Berry was present at the meetings. There were always two elders at the meetings. The elders did not report the ongoing abuse the plaintiffs were suffering, and instructed Poisson not to report it. They told her to "be silent about the abuse and to be a better wife."

Based upon these allegations, I believe that defendant Wilton Congregation had reason to anticipate Berry's criminal conduct and that it created a situation facilitating Berry's conduct. Accordingly, I find a duty based upon the special circumstances exception. As noted above, this exception includes when the opportunity for criminal misconduct is brought about by the actions or inactions of the defendant. *Iannelli*, 145 N.H. at 194. The exact occurrence or precise injuries need not have been foreseeable, *id.*, though in this case they arguably were. The Wilton Congregation was aware of the harm being perpetrated on the plaintiffs through repeated reports. Due to the number of reports over the years, it was also aware that the abuse was ongoing.

The majority notes: "There is no allegation that the elders acted in any way other than by providing spiritual guidance and scriptural advice, at the request of the plaintiffs' mother." The majority's analysis of the special circumstances exception does not address the plaintiffs' allegation that the elders of the Wilton Congregation instructed Poisson not to report the abuse to secular authorities. I find no meaningful difference, however, between the facts alleged in this case, and the facts of the special circumstances cases relied upon by the majority. *See Remsburg*, 149 N.H. at 154-55 (risk of criminal misconduct, including stalking and identity theft, sufficiently foreseeable, therefore special circumstances imposed duty on private investigator to exercise reasonable care in disclosing third party's information to client); *Walls*, 137 N.H. at 659 (duty to protect tenants from criminal attack may arise when landlord has created or is responsible for a known defective condition that foreseeably enhanced risk of attack). The majority characterizes these cases as relying upon the element of control. I do not find this retrospective statement of the law persuasive.

In this case, the elders of defendant Wilton Congregation not only created an opportunity for Paul Berry to *continue* abusing the plaintiffs precisely because of their inaction, but actively facilitated the continuing abuse by their instruction to Poisson not to act. Further, the elders instructed Poisson not to report the abuse in the presence of the abuser himself. It is not unreasonable to infer that Berry continued abusing the

plaintiffs, his daughters, safe in the knowledge that Poisson was not going to report him to secular authorities.

The elders of the Wilton Congregation were aware of Poisson's understanding of the policy against seeking outside help. Yet, despite the numerous reports, made at different times to different elders of the Wilton Congregation, none of them advised her to seek help from secular authorities, and at least some of them instructed her *not* to seek such help, effectively allowing Paul Berry to continue his pattern of abuse. Because the harm done to the plaintiffs was foreseeable to the Wilton Congregation, and facilitated both by its action and inaction, the Wilton Congregation had a duty to protect the plaintiffs from it.

The majority fears heading down a slippery slope where friends and relatives will face tort liability for giving bad advice. This is an unusual case, however, and I would decide it based upon its facts alone. The facts creating the duty in this case were the elders' awareness of Poisson's religious beliefs, the fact that her husband was the one abusing the children, the elders' knowledge of the abuse over the years, their continued failure to counsel her to seek help, their specific instruction to her not to seek help when she relied upon their guidance and the fact that they did so in Berry's presence. These special circumstances created an opportunity for Berry to continue abusing the plaintiffs.

Children who are victims of physical and sexual abuse are limited in their ability to protect themselves, especially when their abuser is a parent. The legislature has recognized this fact, and has attached criminal liability to *any person* who fails to report suspected child abuse, no matter what their connection to the child, if any. *See* RSA 169-C:29. Recognizing a common law duty to protect children through counseling a parent to seek help, would accurately reflect our collective concern for the vulnerable class of child abuse victims.

The trial court found that, to the extent a common law duty may have existed, the religious privilege barred the defendants from disclosing the abuse. *See* N.H. R. Ev. 505. The trial court concluded, therefore, that any allegations that the defendants breached their duty by failing to report or disclose the abuse could not stand. The majority does not address whether the defendants were barred from disclosing the abuse by the religious privilege, and I decline to address it as well because I find that Wilton Congregation's duty could have been satisfied simply by counseling Poisson to report the abuse to secular authorities.

The plaintiffs also claimed, in the aggregate, that the Wilton Congregation was negligent in failing to instruct Poisson to seek help and treatment for the plaintiffs outside the Congregation. The trial court classified these remaining claims as claims for negligent counseling. The

trial court found that investigation into these claims was barred by the First Amendment of the Federal Constitution, concluding that such investigation would result in "excessive government entanglement with religion."

I disagree with the trial court's characterization of this inquiry. The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. It is applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "[T]he Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute, but in the nature of things, the second cannot be." *Id.* at 303-04. "[T]he prohibition extends to common law provisions as well as statutory enactments." *Smith v. O'Connell*, 986 F. Supp. 73, 77 (D.R.I. 1997).

Courts around the country are split on whether civil suits against religious entities or their officials are permitted under the First Amendment. These suits have been brought under many theories, including breach of fiduciary duty, common law negligence, negligent supervision and hiring, and negligent counseling. *See Malicki v. Doe*, 814 So. 2d 347, 357-58 (Fla. 2002) (summarizing litigation from around the country); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1256-61 (Miss. 2005) (listing state and federal court decisions on either side of the issue).

The defendants make no arguments specific to the State Constitution, but rely upon the Federal Constitution alone. The United States Supreme Court's cases concerning the Free Exercise Clause

> establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. . . . Neutrality and general applicability are interrelated . . . . A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32 (1993) (citation omitted).

The Supreme Court has never held that "when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation." *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 882 (1990). "[I]n order to launch a free exercise challenge, it is necessary to

show the coercive effect of the enactment as it operates against the individual in the practice of his religion." *Malicki*, 814 So. 2d at 354 (quotation and brackets omitted). "A law establishing standards of conduct does not implicate the free exercise clause unless adherence to those standards interferes with some religious activity." *O'Connell*, 986 F. Supp. at 78.

"The Free Exercise Clause is violated only when laws *actually conflict* with a religion's specific doctrines and therefore impose penalties either for engaging in religiously motivated conduct or for refusing to engage in religiously prohibited conduct." *Fortin v. Roman Catholic Bishop of Portland*, 871 A.2d 1208, 1227 (Me. 2005) (quotation omitted; emphasis added). The inquiry "asks whether government has placed a substantial burden on the observation of a *central religious belief or practice* ...." *Swaggart Ministries v. Cal. Bd. of Equalization*, 493 U.S. 378, 384-85 (1990) (quotation omitted; emphasis added). The entity claiming First Amendment protection must identify "a specific religious doctrine or practice that will be burdened" by pursuit of the lawsuit. *Fortin*, 871 A.2d at 1226.

The defendants in this case have not identified a specific religious doctrine or practice that would be burdened by a recognition of a common law duty to protect the plaintiffs. The defendants have not alleged that they were forbidden from counseling Poisson to seek outside help, or even that the Jehovah's Witness faith prohibits its members from seeking outside help. Therefore, I would hold that the Free Exercise Clause of the First Amendment does not bar the plaintiffs' lawsuit, as no central tenet of the faith would be burdened by a finding of a common law duty.

Further, "[a] law, legislatively or judicially created, that would regulate or prevent religiously motivated conduct does not violate the First Amendment if the State's interests in the law's enforcement outweighs the burden that the law imposes on the free exercise of religion." *Alberts v. Devine*, 479 N.E.2d 113, 123 (Mass. 1985). Even if the recognition of a duty to counsel Poisson to seek help from the authorities violated a tenet of the Jehovah's Witness faith, I would hold, in recognition of the State's obvious interest in protecting children from abuse, that the burden on the free exercise of the defendants' religion is minimal.

State action does not violate the Establishment Clause if: (1) it has a secular purpose; (2) "its principal or primary effect [is] one that neither advances nor inhibits religion"; and (3) it does not "foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). The defendants argue that any inquiry into the counsel given to Poisson would foster excessive government entanglement with religion, as it would require the trial court to evaluate religious doctrine

and the quality and substance of religious counseling. They argue that such an inquiry amounts to a claim for "clergy malpractice," a cause of action which has not been recognized by any court. *See* 47 AM. JUR. *Trials* 271, 288 (1993 & Supp. 2004).

The defendants do not challenge the plaintiffs' claim upon either of the first two parts of the *Lemon* test. The United States Supreme Court has recognized, however, that the third part of the test, the entanglement factor, is significant simply as an aspect of the inquiry into the *effect* of the government action, the second part of the test. *Agostini v. Felton*, 521 U.S. 203, 233 (1997). I do not find that the inquiry into the advice given by the elders of the Wilton Congregation would have as its principal and primary effect either the advancement or inhibition of religion. Any entanglement created by the imposition of a duty upon the elders of the Wilton Congregation does not rise to the level of being excessive. It would merely require that when a duty arose due to the foreseeability of harm, the elders would be required to, at the very least, counsel the member who approaches them for advice to seek help.

Nor do I find that it would create a cause of action for clergy malpractice. The definition of malpractice relies upon adherence to professional standards. *See* BLACK'S LAW DICTIONARY 971 (7th ed. 1999). There is no need to rely upon any "professional" clerical standard here to discover the Wilton Congregation's duty in this case. *See Morrison*, 905 So. 2d at 1237-38, 1239-40. As the trial court found in its ruling on an earlier motion for summary judgment: "The burden involves only common sense advice to the church member . . . ."

In *Malicki*, the Florida Supreme Court rejected a First Amendment bar to tort liability for the negligent conduct of church officials that resulted in harm to the plaintiffs. In its opinion, the court quoted the reasoning of a lower Florida court, which had come to a slightly different conclusion, but whose reasoning I find persuasive: "[J]ust as the State may prevent a church from offering human sacrifices, it may protect its children against injuries caused by pedophiles by authorizing civil damages against a church that knowingly (including should know) creates a situation in which such injuries are likely to occur." *Malicki*, 814 So. 2d at 360 (quotation omitted).

Finally, I would uphold the trial court's decision that though the statute of limitations, RSA 508:4, I (1997) and RSA 508:8 (1997), had expired by the time that plaintiff Holly Berry filed suit, the discovery rule allowed her to bring suit within three years of the time she discovered, "or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I. Though the plaintiff was aware of the sexual abuse, she was not aware of

the defendant's response to Poisson's repeated requests for aid until "within a short period of time prior to filing" the lawsuit. Therefore I would uphold the trial court's determination that Holly Berry is not barred by the statute of limitations, and allow both Holly and Heather Berry to proceed with their claims against defendant Wilton Congregation for common law negligence. Accordingly, I respectfully dissent.