Rockingham
No. 2006-284

KRISTIN WARD, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF CASEY MILLER

v.

INISHMAAN ASSOCIATES LIMITED PARTNERSHIP *& a.*

Argued: April 17, 2007
Opinion Issued: August 22, 2007

*Mittelholzer & Dibble, PLLC,* of Newmarket (*Stephen J. Dibble* on the brief and orally), for the plaintiffs.

*Sulloway & Hollis, PLLC,* of Concord (*Edward M. Kaplan* and *Melissa M. Hanlon* on the brief, and *Mr. Kaplan* orally), for the defendants.

BRODERICK, C.J. The defendants, Inishmaan Associates Limited Partnership (Inishmaan) and JCM Management Company (JCM), appeal the denial by the Superior Court (*McHugh,* J.) of motions for a directed verdict and for summary judgment made during the trial of this personal injury action. We reverse in part, vacate in part, and remand.

Inishmaan owns the Osprey Landing Apartment Community, a 329-unit mixed income housing complex in Portsmouth. JCM manages Osprey Landing on behalf of Inishmaan. The plaintiff, Kristin Ward, individually and as next friend of her son, Casey Miller, brought suit against the defendants. The plaintiff sought damages for injuries that occurred as the result of an alleged criminal assault on her by her neighbor, Merry Sommers (Sommers), when the plaintiff was living in the housing complex. Casey witnessed the attack but was not injured. We refer hereinafter to Kristin and Casey collectively as the plaintiff.

Following a three-day trial, the jury returned a verdict in favor of the plaintiff. The defendants appeal, arguing that the trial court erred: (1) in denying their motion for directed verdict because there was no evidence of any special circumstances to impose on them a duty to protect the plaintiff from a criminal assault by a third person; (2) in denying their motion for summary judgment as to the plaintiff's claims for breach of an implied warranty of habitability; and (3) in refusing to direct a verdict for them because the plaintiff provided no expert testimony to establish the applicable standard of care.

On July 12, 2002, Sommers assaulted the plaintiff outside the plaintiff's apartment, stabbing her several times. Friction between Sommers and the plaintiff had begun in September 1999. Sommers frequently made offensive verbal comments to the plaintiff, persistently banged on a common wall that separated their two apartments, and made numerous and unsubstantiated complaints to the management of excessive noise, slamming of doors and purported drug dealing in the plaintiff's apartment. In March 2002, Sommers pushed the plaintiff's car door into her while the plaintiff was in the process of removing Casey from his car seat. The plaintiff reported the incident to the police, but they apparently concluded that no criminal activity had taken place. The plaintiff regularly registered her complaints about Sommers' behavior with JCM personnel.

After the stabbing incident, Sommers was arrested and charged with attempted murder. The plaintiff brought suit against Inishmaan and JCM alleging that they failed to protect her from Sommers' purported criminal assault. The Portsmouth Housing Association was also sued but settled prior to trial. Sommers died before being brought to trial on the criminal charges.

At the close of the plaintiff's case and again at the end of all the evidence, the trial court denied the defendants' motion for directed verdict. The defendants argue that that ruling was erroneous because the plaintiff's evidence failed to establish any of the special circumstances required by law to impose liability on a landlord for criminal assault by a third person. "We will uphold a trial court's ruling on a motion for a directed verdict when the record supports the conclusion that the trial court did not commit an unsustainable exercise of discretion." *Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 621 (2005). "A trial court may grant a motion for a directed verdict only if it determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." *Id.*

This case is governed by our decision in *Walls v. Oxford Management Company*, 137 N.H. 653 (1993). In that case we were presented with the question whether New Hampshire law imposes a duty on landlords to provide security to protect tenants from the criminal attacks of third persons. *Id.* at 655. We recognized that the issues raised by that question "place[d] the court at the confluence of two seemingly contradictory principles of law." *Id.* at 656. "On one hand lies the accepted maxim that all persons, including landlords, have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm." *Id.* "On the other hand, a competing rule holds that private persons have no general duty to protect others from the criminal acts of third persons." *Id.*

At the outset, we agreed with numerous courts that have held that, "as a general principle, landlords have no duty to protect tenants from criminal attack." *Id.* at 658. As we noted, "there is much to be gained from efforts at curtailing criminal activity. Yet, we will not place on landlords the burden of insuring their tenants against harm from criminal attacks." *Id.* We then further considered whether any of the exceptions to the general rule against holding individuals liable for the criminal attacks of others could apply to the landlord-tenant relationship. Our review of the law suggested four possible exceptions. *Id.*

The first exception arises when a "special relationship" exists between the parties. Explaining that courts have repeatedly held that "a landlord-tenant relationship is not a special relationship engendering a duty on the

part of the landlord to protect tenants from criminal attack," *id.*, we rejected liability "based solely on the landlord-tenant relationship," *id.* at 659.

The second exception arises "where an especial temptation and opportunity for criminal misconduct *brought about by the defendant*, will call upon him to take precautions against it." *Id.* at 658 (quotation omitted). This means that "a party who realizes or should realize that his conduct has created a condition which involves an unreasonable risk of harm to another has a duty to exercise reasonable care to prevent the risk from taking effect." *Id.* According to the majority of cases, this exception is generally limited in landlord-tenant cases to situations where "a known *physical defect* on the premises foreseeably enhanced the risk of that attack." *Id.* at 659 (emphasis added). Thus we concluded that a duty to protect tenants from criminal attack "may arise when a landlord has created, or is responsible for, a known defective condition on a premises that foreseeably enhanced the risk of criminal attack." *Id.*

The third exception is the existence of overriding foreseeability, which would hold landlords "to a duty to protect tenants from criminal attacks that were clearly foreseeable, even if not causally related to physical defects on the premises." *Id.* We rejected liability based upon that principle. *Id.*

The fourth exception arises from the general tort principle "that one who voluntarily assumes a duty thereafter has a duty to act with reasonable care." *Id.* We held that "a landlord who undertakes, either gratuitously or by contract, to provide security will thereafter have a duty to act with reasonable care." *Id.*

■ Therefore, of four possible exceptions to the general rule that landlords have no duty to protect tenants from criminal attack, we accepted two and rejected the others. Thus, under the holding in *Walls*, such a duty may arise "when a landlord has created, or is responsible for, a known defective condition on a premises that foreseeably enhance[s] the risk of criminal attack." *Id.* In addition, a landlord who undertakes to provide security has a duty to act with reasonable care. *Id.* "Where, however, a landlord has made no affirmative attempt to provide security, and is not responsible for a physical defect that enhances the risk of crime, we will not find such a duty." *Id.* "We reject liability based solely on the landlord-tenant relationship or on a doctrine of overriding foreseeability." *Id.*

The plaintiff relies upon *Iannelli v. Burger King Corporation*, 145 N.H. 190 (2000), in support of her position that "[a] duty exists on the part of a landowner when it is foreseeable that an injury might occur as a result of

the landowner's actions or inactions." *Iannelli*, however, did not concern a landlord-tenant relationship and, therefore, is not applicable to these facts. Furthermore, *Iannelli* states incorrectly that in *Walls* we held that particular circumstances giving rise to a duty on the part of a landlord to protect tenants from criminal attacks "include when the opportunity for criminal misconduct is brought about by the actions or inactions of the owner or where overriding foreseeability of such criminal activity exists." *Iannelli*, 145 N.H. at 194. In fact, in *Walls* we *specifically rejected* a landlord's liability for criminal attacks based upon a doctrine of overriding foreseeability. *Walls*, 137 N.H. at 659; *see VanDeMark v. McDonald's Corp.*, 153 N.H. 753, 760 (2006).

As a matter of law there is no duty imposed upon a landlord for criminal attacks based upon overriding foreseeability. Of the two possible exceptions in which a landlord may have a duty to protect tenants from criminal attack, neither one is present in this case. The plaintiff's evidence failed to establish that the defendants created or were responsible for a physical defect on the premises that foreseeably enhanced the risk of criminal attack. Nor did the plaintiff's evidence establish that the defendants undertook to provide security against criminal attacks. Therefore, we hold that the trial court's denial of the defendants' motion for a directed verdict constituted an unsustainable exercise of discretion, and we reverse that ruling. *See Figlioli*, 151 N.H. at 621.

The second issue raised by the defendants is whether the trial court erred in denying their motion for summary judgment on the plaintiff's claim that the landlord breached an implied warranty of habitability. The defendants argue that the warranty of habitability implied in residential lease agreements protects tenants from structural defects, but does not require landlords to take affirmative measures to provide security against criminal attack. The plaintiff argues that the lease entered into by the parties and its ancillary resident handbook and community rules and regulations "created an express or implied warranty of habitability that did extend to matters of physical safety from criminal activity regardless of defects in the structural condition of the building." The plaintiff cites no law in support of this position.

"In reviewing a trial court's ruling on a motion for summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *WMUR Channel Nine v. N.H. Dep't of Fish & Game*, 154 N.H. 46, 47 (2006) (quotation omitted). "If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to

judgment as a matter of law, we will affirm the trial court's decision." *Id.* (quotation omitted).

■ In *Walls*, we considered "whether a landlord's implied warranty of habitability to provide a reasonably safe premises requires the landlord to secure tenants against criminal attack." *Walls*, 137 N.H. at 660. We held that "the warranty of habitability implied in residential lease agreements protects tenants against structural defects, but does not require landlords to take affirmative measures to provide security against criminal attack." *Id.* at 661. We noted that "[t]his holding in no way limits a tenant's recovery when a landlord has violated an express agreement to provide security measures." *Id.*

■ Nothing in the documentation referred to by the plaintiff indicates that the defendants expressly agreed to "provide security measures" against criminal attack. Absent such an agreement, the holding in *Walls* applies and therefore limits the warranty of habitability to structural defects. Viewing the evidence in the light most favorable to the plaintiff, the implied warranty of habitability did not require the defendants to take affirmative measures to provide security against the attack that harmed the plaintiff and the defendants did not expressly undertake to provide such measures. As such, the defendants were entitled to judgment as a matter of law and we reverse the trial court's ruling to the contrary. In light of our ruling, we need not address the defendants' third argument.

"Only after a court has determined that a defendant owed a plaintiff a duty, and identified the standard of care imposed by that duty, may a jury consider the separate question of whether the defendant breached that duty." *Walls*, 137 N.H. at 656. Because we hold that there was no duty as a matter of law, and that the trial court erred in denying the defendants' motions for a directed verdict and summary judgment, the case should not have been submitted to the jury. Accordingly, we vacate the jury's verdict and award and remand this case to the trial court for entry of judgment in favor of the defendants.

> *Reversed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.