Grafton
No. 2006-792

TIMOTHY MACIE

v.

BOBBY L. HELMS & a.

Argued: April 19, 2007
Opinion Issued: September 21, 2007

*Borofsky, Amodeo-Vickery & Bandazian, P.A.,* of Manchester (*Christopher A. Bandazian* and *Erica Bodwell* on the brief, and *Ms. Bodwell* orally), for the plaintiff.

*Bouchard, Kleinman & Wright, P.A.,* of Hampton (*Paul Kleinman* and *Elsabeth Foster* on the brief, and *Ms. Foster* orally), for the defendants.

HICKS, J. The plaintiff, Timothy Macie, appeals a decision of the Superior Court (*Burling,* J.) granting summary judgment to the defendants, Bobby L. Helms and Cooperative Feed Dealers, Inc. We affirm.

The record supports the following. On June 25, 2002, Helms was operating a tractor-trailer for his employer, Cooperative Feed Dealers, Inc. (Cooperative Feed), when Helms struck and damaged a traffic light while negotiating a right-hand turn at the intersection of Main Street and Tracy Street in Lebanon. The plaintiff, an electrician employed by the City of Lebanon, was dispatched on an emergency basis to repair the light. According to his deposition testimony, the plaintiff injured his shoulder during the course of repairs as he "wrench[ed]" the stoplight off the pole and lifted the "full force of the [fifty to sixty pound] light in [his] hand [while] trying to take it down."

The City of Lebanon made a claim for the cost of repairs of the traffic light, which Cooperative Feed paid. The plaintiff then filed suit on a theory of negligence against the defendants, seeking damages for his injury. The defendants moved for summary judgment, arguing that they did not owe a duty to the plaintiff and that the plaintiff's injury was not proximately caused by Helms' conduct. The trial court granted summary judgment on

the grounds that the plaintiff's injury was not reasonably foreseeable. This appeal followed.

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. An issue of fact is "material" for purposes of summary judgment if it affects the outcome of the litigation under the applicable substantive law.

*VanDeMark v. McDonald's Corp.*, 153 N.H. 753, 756 (2006) (citations omitted).

■■■■ To prevail on his negligence claim, the plaintiff must show: (1) the defendants owed him a duty; (2) the defendants breached this duty; and (3) the breach proximately caused his injuries. *Id.* The scope of the duty of care imposed upon the defendants, however, is limited by what risks, if any, are reasonably foreseeable. *Walls v. Oxford Management Co.*, 137 N.H. 653, 656 (1993). "Whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law." *Kellner v. Lowney*, 145 N.H. 195, 197 (2000) (quotation and brackets omitted).

> [T]he concepts of duty and legal causation are closely related and must be considered together. The determination of legal duty focuses upon the policy issues that define the scope of the relationship between the parties. The relevant inquiry, therefore, is whether the plaintiff's interests are entitled to legal protection from the defendant's conduct, or at the defendant's hands, against the invasion which has in fact occurred. The existence of a duty depends upon what risks, if any, are reasonably foreseeable under the particular circumstances.

*Cui v. Chief, Barrington Police Dep't*, 155 N.H. 447, 449 (2007) (quotations, brackets and citations omitted).

In determining whether a duty exists, we recognize that "no negligent act threatens all imaginable harms; unreasonably dangerous conduct is dangerous because it threatens particular kinds of harms to particular kinds of persons in particular ways; responsibility should follow the pattern of the risk." Annotation, *Foreseeability as an Element of Negligence and Proximate Cause*, 100 A.L.R.2D 942, 961-62 (1965)

(quotation omitted). Accordingly, "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 100 (N.Y. 1928). The scope of the duty, therefore, is limited to those risks that are reasonably foreseeable. *Cui*, 155 N.H. at 449.

We conclude that the defendants did not owe a duty of care to this plaintiff, who was sent by the city to repair the traffic light. We base our decision in large part upon the application of the legal concepts of duty and foreseeability derived from Chief Justice Cardozo's majority opinion in *Palsgraf*.

In *Palsgraf*, the defendant's guard came to the aid of a passenger teetering on the edge of a departing railroad car by pushing him from behind. *Palsgraf*, 162 N.E. at 99. The passenger carried a small package, which unbeknownst to the guard, contained fireworks. *Id.* As the guard attempted to help the passenger, the package fell, causing the fireworks to explode. *Id.* The explosion caused scales further down the platform to fall, striking the plaintiff who was standing on the platform. *Id.* Chief Justice Cardozo reasoned that "[t]he conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff . . . ." *Palsgraf*, 162 N.E. at 99.

We apply this principle here. Helms may have owed a duty of care to certain persons to operate the tractor-trailer in a safe manner and he may well have breached that duty in striking the traffic light. Such a duty, however, was not owed to the plaintiff under the circumstances of this case.

The trial court reasoned that there are

> a variety of foreseeable injuries arising from an inoperable traffic light which would create a duty for the defendants. For example, had Helms['] conduct resulted in injury to a motorist as a result of an accident caused by the inoperable traffic light, such conduct could lead to the imposition of a duty upon the defendants to the injured motorist. . . . However, Helms' conduct in relation to [such a] potential plaintiff[] does not constitute a wrong in relation to the plaintiff in this case.

Even assuming, without deciding, that Helms would have owed a duty to such an injured motorist, we agree with the trial court that no duty was owed to the plaintiff.

The defendants owed no duty to the plaintiff because a reasonable person could not foresee that the fifty-to-sixty-pound light would need to be completely removed from the pole and that the plaintiff would pull and

then lift the entire weight of the light on one arm, thereby injuring his shoulder. We agree with the defendants that

> the plaintiff's injury in this case does not follow from the breach of the duty to operate a tractor-trailer safely, but the choice to use one arm to pull a 50-60 pound light fixture down from overhead.
>
> ... Mr. Helms could not have foreseen that a repair person, in the course of repairing the light[,] would need to remove the fixture and hold the light over his head with one arm in order to repair the light.

Our decision here is supported by our case law. In *Williams v. O'Brien*, 140 N.H. 595, 596 (1995), we held that, absent special circumstances, a driver who signals the operator of another motor vehicle to proceed does not owe a duty of care to other motorists on the roadway. Our decision there weighed heavily upon the policy considerations of "prevent[ing] the imposition of remote and unexpected liability on defendants." *Williams*, 140 N.H. at 599. In *Millis v. Fouts*, 144 N.H. 446 (1999), we declined to find that a landlord owed a duty of care to his tenant for an injury she received while removing a rotted fence on the property. We held that the "plaintiff was injured while removing a fence that she knew was rotten," *Millis*, 144 N.H. at 449-50, and that "the landlord should not be held liable for the reasonably unforeseen consequences of his tenant's actions," *id.* at 450.

These cases limited the scope of duty based upon a lack of foreseeability. We apply the same limitations here. The defendants in this case could not reasonably have perceived that the series of events would occur and that the plaintiff would take the actions he did, causing eventual injury. As in *Millis*, we will not hold the defendants liable "for the reasonably unforeseen consequences of [the plaintiff's] actions." *Id.*

Furthermore, we agree with the trial court that finding the defendants negligent in this case would result in "every person who necessitated some type of repair work ... becom[ing] an insurer to those injured in the course of performing their ordinary work." "We are satisfied that liability would be unduly and indeed indefinitely extended by [such an] enlargement of the zone of duty." *H. R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 899 (N.Y. 1928); *see also Island Shores Estates Condo. Assoc. v. City of Concord*, 136 N.H. 300, 306 (1992) (recognizing the dangers of unlimited liability which is "a consideration that must be a factor in every negligence analysis").

The plaintiff argues that there is "a direct physical relationship between the damaged traffic signals caused by Helms' negligence and [the] injury

[the plaintiff] sustained while working on the damaged traffic signals." This may be true; however, while this goes to the causal connection between Helms' conduct and the plaintiff's injury, it does not alone establish a duty.

The plaintiff further argues that summary judgment should not lie because there exists a genuine issue of material fact as to whether the plaintiff was injured in the course of performing his ordinary work or, rather, under "exigent, dangerous, and abnormal conditions." We disagree that this is a material fact. An issue of fact is material if it affects the outcome of the litigation. *See VanDeMark*, 153 N.H. at 756. Even assuming, arguendo, that the plaintiff was performing work under "exigent, dangerous, and abnormal conditions," this would not change our holding. The mere fact that an emergency or dangerous condition existed at the intersection does not create a duty owed to the plaintiff in this case. *Cf. Palsgraf*, 162 N.E. at 99.

█ We also reject the plaintiff's argument that the rescue doctrine applies. The rescue doctrine allows persons to maintain an action in negligence for injuries suffered in an "effort[] to protect the personal safety of another." W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS 44, at 307 (5th ed. 1984). In *Maxfield v. Maxfield*, 102 N.H. 101 (1959), we extended this doctrine to a plaintiff who was injured in an attempt to rescue her car, which was parked next to the defendant's burning barn. This doctrine does not, however, apply here, where the plaintiff was working in the course of his employment, *see Griner v. Georgia Farm Bureau Mut. Ins. Co.*, 596 S.E.2d 758, 761 (Ga. Ct. App. 2004), and was not acting to "rescue" any person or property from injury.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.