NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2012-926


KATHLEEN BOULTER

v.

ELI AND BESSIE COHEN FOUNDATION D/B/A COHEN CAMPS

Argued: January 22, 2014
Opinion Issued: June 20, 2014


Borofsky, Amodeo-Vickery & Bandazian, P.A., of Manchester (Stephen E. Borofsky and Kara M. Simard on the brief, and Mr. Borofsky orally), for the plaintiff.


Sulloway & Hollis, P.L.L.C., of Concord (Derek D. Lick on the brief and orally), for the defendant.


CONBOY, J. The plaintiff, Kathleen Boulter, appeals an order of the Superior Court (McHugh, J.) granting summary judgment in favor of the defendant, Eli and Bessie Cohen Foundation, doing business as Cohen Camps. We affirm.

The trial court found, or the record supports, the following facts. In the summer of 2008, the defendant hired Michael Feld to serve as a counselor at

Camp Tel Noar (the camp) on Sunset Lake in Hampstead, as it had done the previous summer. Prior to employing him each summer, the defendant performed a criminal background check on Feld, and each time his record was clear. During the beginning of his second summer at the camp, other counselors noticed a change in Feld's personality from the prior year, including that he was more outgoing and eccentric, and that he behaved inappropriately at times. Feld has suffered from bipolar disorder for years.

During the first week of July 2008, Feld's second week at the camp, a counselor reported Feld for yelling at the children in Feld's theater class in an attempt to evoke an emotional response from them. When spoken to by the camp's director, Feld recognized his error and agreed to adopt a softer approach. Shortly thereafter, Feld's father spoke with the camp director and informed him that Feld could become "manic" and should be taking his medication. That same week, Feld attended a psychiatric appointment in Massachusetts.

On the evening of July 6, Feld and a group of counselors went to a Dunkin' Donuts restaurant. While there, Feld became increasingly agitated, expressed a desire to return to the camp, and began throwing away the other counselors' unfinished food and drinks in an attempt to compel them to leave. Upon their return to the camp around midnight, Feld's roommate reported Feld's behavior to the boys' head counselor. Feld and his roommate then conversed with one another in their room for several hours, during which time Feld's behavior became increasingly erratic and he demonstrated mood swings, paranoid thoughts, and delusions of grandeur. At around 4 a.m. on July 7, Feld became upset with his roommate and left the room.

At approximately 5:00 a.m., Feld forced his way into a private residence immediately adjacent to the camp. Feld was wearing pants that were wet. He wore no shirt, appeared confused, and was speaking a foreign language. The homeowner's wife telephoned the police and Feld ran from the premises. The plaintiff, a Hampstead police officer, was dispatched "to detain, question and/or arrest the suspect as a result of his alleged conduct, and to investigate the home invasion complaint." As the plaintiff was interviewing the homeowner, they observed Feld running down the road naked. The plaintiff ran after Feld, repeatedly telling him to "get down on the ground." When Feld charged at her, the plaintiff discharged her taser, but Feld tackled her and began to strangle her, nearly causing her to lose consciousness. The homeowner knocked Feld off the plaintiff and the plaintiff locked herself and the homeowner in her police cruiser to wait for backup. Feld was subsequently apprehended following a struggle with the plaintiff and two other officers who had been called to the scene.

The plaintiff brought suit against the defendant and Feld to recover for injuries she suffered as she was attempting to arrest Feld, alleging negligent, reckless, and intentional misconduct. All four of the counts in her writ that pertain to the defendant are based upon the assertion that the defendant owed the plaintiff a duty of care. In Count I of her writ, the plaintiff alleged that the defendant "knew or should have known that . . . Feld was likely to cause bodily harm and that he represented a danger to . . . [her]," and that it was the duty of the defendant

> to reasonably apprehend the dangerousness of . . . Feld; to properly supervise and/or control the behavior of . . . Feld; to protect and warn persons, including those in authority in the Town of Hampstead, from and of the erratic, aggressive, bizarre and dangerous behavior of . . . Feld; to terminate the employ of and/or remove . . . Feld from Camp Tel Noar; to investigate his erratic, aggressive, bizarre and dangerous behavior; to take appropriate actions to protect persons from the dangerous behavior of . . . Feld to include, but not limited to, assisting him in obtaining mental health or other services and making sure he was on his medication so as to assure that he was not a danger; and to otherwise . . . use reasonable care so as to avoid bodily injury to persons, including the Plaintiff herein.

According to the plaintiff, "as a direct, proximate, and foreseeable result of the negligence of the Defendant, . . . [she] sustained painful, serious and permanent injuries."

In Count II, the plaintiff alleged that, given its knowledge of facts "which created a high degree of risk of physical harm to . . . [her]" and its deliberate act or failure to act "in conscious disregard of, [or] indifference to, the risk," the defendant owed her "a duty not to act or fail to act recklessly with regard to its hiring, investigation, training, supervision and/or retention of . . . Feld and with regard to warning the public, including the Plaintiff . . . , as to the risk of injury due to what it knew to be . . . Feld's dangerous condition."

In Count III, the plaintiff alleged that given its knowledge and conduct, the defendant owed her "a duty not to act or fail to act intentionally with regard to its hiring, investigation, training, supervision and/or retention of . . . Feld and with regard to warning the public, including the Plaintiff . . . , as to the risk of injury due to what it knew to be . . . Feld's dangerous condition."

In Count VII, the plaintiff alleged that the defendant owed her a duty of care "to properly hire, train and supervise its employees and agents with respect to their job requirements and behavior while in its employ . . . and . . . to terminate the employ of and/or otherwise remove from Camp Tel Noar any

3

employee and/or agent behaving in an erratic, aggressive, bizarre and/or dangerous manner, which behavior exposed others to the unreasonable risk of bodily harm," and that the defendant breached its duty of care by

> its hiring of . . . Feld who had pre-existing mental health conditions which made it inappropriate for him to be employed at a children's camp; its failure to properly train and supervise . . . Feld with regard to appropriate behavior at the camp; and its failure to terminate his employ and/or remove him from Camp Tel Noar after receiving numerous complaints about his erratic, aggressive, uncontrollable and dangerous behavior towards other persons at the camp, including children.

The defendant moved for summary judgment, arguing that the plaintiff's claims are barred by RSA 507:8-h (2010) (amended 2013, eff. Jan. 1, 2014) (the "Firefighter's Rule"), that the plaintiff could not establish, as a matter of law, that the defendant acted recklessly or intentionally, and that the defendant owed no duty to the plaintiff to protect her from the criminal conduct of third parties. The plaintiff objected, arguing that because her claims are against the defendant, not Feld, they are not barred by RSA 507:8-h, that on the undisputed facts it is clear that the defendant "acted recklessly, and probably intentionally," and that the defendant owed her a duty "to protect her from the injuries she sustained during the arrest of [its] employee, Feld." The trial court granted the defendant's motion, finding that the plaintiff's negligence claims are barred by RSA 507:8-h, that none of the defendant's actions or inactions could be deemed to be either reckless or intentional, and that the defendant did not owe a duty to the plaintiff.

On appeal, the plaintiff argues that the trial court erred in finding that the Firefighter's Rule bars her claims. In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Antosz v. Allain, 163 N.H. 298, 299 (2012). We will affirm the grant of summary judgment only if our review of that evidence discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id. We review the trial court's application of the law to the facts de novo. Id.

We adopted the Firefighter's Rule in England v. Tasker, 129 N.H. 467 (1987), holding that neither a firefighter nor a police officer can recover in negligence when the officer's injuries are caused by the same conduct that required the officer's official presence. Tasker, 129 N.H. at 468-72. The rule rests upon public policy considerations: "Policemen and firemen are paid to confront crises and allay dangers created by an uncircumspect citizenry," and "it is fundamentally unfair to ask the citizen to compensate a public safety

4

officer, already engaged at taxpayer expense, a second time for injuries sustained while performing the very service which he is paid to undertake for the citizen's benefit." Id. at 470-71 (quotation omitted).

The Legislature subsequently codified the Firefighter's Rule in 1993. See RSA 507:8-h; Allain, 163 N.H. at 300. The statute in effect at the time the plaintiff brought her claims provided:

> Firefighters, emergency medical technicians . . . , police officers and other public safety officers shall have no cause of action for injuries arising from negligent conduct which created the particular occasion for the officer's official engagement. However, this section does not affect such officer's causes of action for unrelated negligent conduct occurring during the officer's engagement, or for other negligent conduct, or for reckless, wanton or willful acts of misconduct.

RSA 507:8-h, I. "Under the plain language of the statute, the only relevant inquiry in determining whether a cause of action is barred is whether the negligently-created risk that caused the [plaintiff's] injury was the reason for [her] presence on the scene." Allain, 163 N.H. at 301.

The plaintiff, relying upon the exception in the statute for "other negligent conduct," argues that her claims against the defendant "represent claims for independent acts of negligence, the negligence of a third party, as set forth in Gould v. George Brox, Inc., 137 N.H. 85 (1997)," and thus are not barred by the Firefighter's Rule. The defendant argues that the plaintiff "cannot claim that 'but for' the Camp's conduct she would not have been at the scene and injured, while, on the other hand, claiming that the Camp's actions did not 'create the particular occasion for [her] official engagement' to avoid the [Firefighter's Rule]." The defendant asserts that "[e]ither the Camp's negligent conduct caused her to be at the scene and her claim is barred under the [Firefighter's Rule], or the Camp's conduct did not cause her to be at the scene and her claim cannot proceed because that conduct did not proximately cause her injuries."

We disagree with the plaintiff that the "other negligent conduct" exception in the statute is applicable and conclude that Gould is distinguishable from this case. In Gould, the plaintiff, a police officer, was working a private detail under the control of George Brox, Inc. (Brox), directing traffic at a highway construction site, when the operator of a dump truck (defendant Dionne) accidentally pulled down a telephone wire from a nearby utility pole. Gould, 137 N.H. at 87. In order to clear the area of traffic, the plaintiff directed automobiles over the wire. Id. The driver of one of the vehicles (defendant Lavertu) failed to stop as directed by the plaintiff, and ran

into a section of the wire that had been raised above the ground by construction personnel working for defendant Brox, causing it to strike and injure the plaintiff. Id.

In determining the applicability of the Firefighter's Rule, we noted that "[c]ase law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow." Id. at 89 (quotation omitted). Applied to the facts presented, "[t]he negligence that engaged the plaintiff . . . was the negligence of defendant Dionne in causing the telephone wire to become disengaged from the utility pole, thus creating the hazard that required the plaintiff's presence." Id. at 90. We explained that the plaintiff "responded to the scene to control traffic and was not injured while responding in his professional capacity to the very type of situation for which he was paid and trained to cope, but rather by the subsequent and independent negligence of Lavertu and/or Brox employees." Id. (quotation and citation omitted). Accordingly, we held that the trial court did not err in granting summary judgment for defendant Dionne. Id. As to the other two defendants, the plaintiff sought damages for the "subsequent and independent acts of the Brox employees in manipulating the downed wire in a negligent manner and the act of Lavertu in running into the partially raised wire with his vehicle." Id. at 90-91. Because such conduct is excluded from immunity under the Firefighter's Rule, we reversed the grant of summary judgment to those defendants. Id. at 91.

Here, the negligence claims in Counts I and VII of the plaintiff's writ, as set forth above, are based upon the assertion that had the defendant not acted negligently, Feld would not have broken into the private residence and the plaintiff would not have been called to the scene and injured while attempting to arrest him. Because the injury giving rise to the plaintiff's negligence claims directly arose from the alleged "negligent conduct which created the particular occasion for [her] official engagement," RSA 507:8-h, I, we conclude that such claims are barred by the Firefighter's Rule.

In an effort to invoke the exception in the statute precluding application of the Firefighter's Rule for "reckless, wanton or willful acts of misconduct," id., the plaintiff argues that the trial court erred in finding that the actions or inactions of the defendant were not reckless or intentional, as she alleged in Counts II and III of her writ. The plaintiff asserts that she adduced specific facts, along with reasonable inferences, that show the defendant's "conduct was reckless in that there was a high degree of risk of serious harm to anyone around Feld based on his increasingly unstable, aggressive and uncontrolled behavior" and that the defendant's "conduct was intentional because the Camp was aware that Feld's behavior was substantially certain to result in injury if he were not properly supervised, controlled, or taking medication." The

6

plaintiff also asserts that the trial court erroneously weighed the evidence, failed to determine whether there were disputed issues of fact or law, and failed to consider her facts. The defendant argues that, based upon the undisputed facts in the record, the trial court properly concluded that those facts are insufficient as a matter of law to give rise to a claim of recklessness against it, and that the defendant's actions cannot be deemed intentional under New Hampshire law.

The plaintiff cites section 500 of the Restatement (Second) of Torts in support of her argument that the camp's conduct was reckless. See Restatement (Second) of Torts § 500, at 587 (1965). Under the Restatement, conduct is "reckless" if it "would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Id. The conduct "must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence." Id. comment a at 588.

Assuming, without deciding, that the standard set forth in section 500 of the Restatement applies, we agree with the trial court that "[t]aking the facts in a light most favorable to the plaintiff, from the perspective of the defendant, all [Feld] did was exhibit unusual behavior shortly before the incident in question." The plaintiff's expert, a licensed psychologist, provided a report based upon his review of "the available documentation," containing his opinion that "[i]t is clear that [Feld's] increasingly severe psychiatric problems were obvious to those who had contact with him," that "[c]oncerns were also raised that [Feld] was becoming more aggressive and might not be able to control his anger," and that "[o]ther counselors were concerned about [Feld's] behavior and are reported to have expressed their concerns that [Feld] should not be working around children." However, even viewing this report in the light most favorable to the plaintiff, it is insufficient to raise a triable issue of fact as to whether the defendant acted recklessly under the standard set forth above.

There is no evidence in the record that Feld threatened substantial physical harm or death prior to his encounter with the plaintiff on July 7, nor is there evidence that the defendant's actions, or failure to act, presented a danger of substantial physical harm or death. Further, it is undisputed that Feld was experiencing his first episode of mania at the time of his arrest. The physician who undertook a "dangerousness evaluation" of Feld after the events at issue occurred concluded that "Feld had a long-standing history of treatment for depression, including the use of psychotropic antidepressant medication, but before the events leading to his arrest, he had no history of mania" and that the severity of his psychiatric problems "was not known prior to those events leading to his arrest."

We hold that, as a matter of law, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, the defendant's alleged conduct cannot be deemed to have created a risk that was "substantially greater than is required for ordinary negligence" or that the risk was one involving "an easily perceptible danger of death or substantial physical harm." Restatement (Second) of Torts § 500 comment a at 588. We reach a similar conclusion regarding the plaintiff's claim of intentional conduct. See Thompson v. Forest, 136 N.H. 215, 219 (1992) ("To constitute an intentional tort, the tortfeasor must have known that his conduct was substantially certain to result in injury.").

Accordingly, the Firefighter's Rule applies and the plaintiff has not, as a matter of law, alleged facts satisfying the exceptions set forth in the statute. In light of our conclusion, we need not address the plaintiff's argument that the trial court erred in finding that the defendant did not owe her a duty of care.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.