NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2013-400


AMICA MUTUAL INSURANCE COMPANY

v.

BEVERLY P. MUTRIE

Argued:  March 5, 2014
Opinion Issued:  November 13, 2014


Sulloway & Hollis, P.L.L.C., of Concord (Sarah S. Murdough on the brief and orally), for the petitioner.


Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth, for the respondent, filed no brief.


Boynton, Waldron, Doleac, Woodman & Scott, P.A., of Portsmouth (Christopher E. Grant on the brief and orally), for the intervenors.


BASSETT, J.  The intervenors, Scott Kukesh, Eric Kulberg, Jeremiah Murphy, and Gregory Turner, appeal an order of the Superior Court (McHugh, J.) granting summary judgment in favor of the petitioner, Amica Mutual Insurance Company (Amica), in the declaratory judgment action that Amica

filed against the respondent, Beverly P. Mutrie. In its order, the trial court concluded that the reckless and wanton conduct in which Mutrie was alleged to have engaged – knowingly permitting her son to engage in criminal activity on her property – did not constitute an "occurrence" as required for coverage under the homeowner's and umbrella insurance policies issued to Mutrie by Amica (the Policies). We affirm.

The following facts are drawn from the trial court's order and the record, or are otherwise undisputed. The intervenors are four police officers who served on a drug task force. On April 12, 2012, the intervenors executed a search warrant at a property in Greenland where Mutrie's son lived. The property is owned by a trust, of which Mutrie is the trustee. The warrant was issued because there was probable cause that Mutrie's son was engaged in criminal activity. During the execution of the search warrant, Mutrie's son opened fire, wounding the intervenors. Mutrie's son then turned the gun on himself.

The intervenors filed a civil suit against Mutrie in July 2012. They alleged that Mutrie was responsible for their injuries because, "with the knowledge, information, and belief" that her son was engaged in criminal activity, she "did recklessly and wantonly allow . . . criminal activity and conduct to take place at the subject property and otherwise directly and indirectly and wantonly and recklessly supported and facilitated [her son's] criminal activity at the subject property."

Amica assigned counsel to defend Mutrie, subject to a reservation of rights. In September 2012, Amica filed a petition for declaratory judgment, requesting a ruling that Amica has no duty to defend and indemnify Mutrie because the "reckless and wanton misconduct" alleged by the intervenors in their writ did not constitute an "occurrence" under the Policies. Subsequently, Amica moved for summary judgment. The trial court ruled in favor of Amica. This appeal followed.

On appeal, the intervenors argue that the trial court erred when it concluded that the reckless and wanton acts alleged by the intervenors constituted "inherently injurious" or "intentional" conduct on the part of Mutrie and, therefore, the conduct did not constitute an "occurrence" under the Policies. The intervenors also argue that the court erred when it failed to consider all of the materials that had been submitted in support of their opposition to Amica's motion for summary judgment. Amica counters that the court properly ruled that Amica owes no duty to defend or indemnify Mutrie because her conduct – as alleged by the intervenors – does not constitute an "occurrence." On cross-appeal, Amica also asserts that the trial court should have ruled that coverage is barred by the Policies' "controlled substances exclusion."

2

"We review de novo the trial court's application of the law to the facts in its summary judgment ruling." Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 652 (2005). "[W]e consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006) (quotation omitted). "If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision." Id. (quotation omitted).

"In New Hampshire, an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 780 (2011) (quotation omitted). Thus, our analysis begins with an examination of the Policies' language. Id. The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for this court to decide. Id. We look to the plain and ordinary meaning of the policy's words in context. Id. at 781. Policy terms are construed objectively, and when the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. Id.

We first consider whether the trial court properly found that Amica owes no duty to defend and that coverage is precluded because Mutrie's alleged conduct did not constitute an "occurrence" under the Policies. Pursuant to the relevant provisions in the Policies, coverage and the insurer's duty to defend are triggered only by an "occurrence." The Policies define an "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. Bodily injury; or b. Property damage." The Policies do not define the term "accident." However, in construing the word "occurrence" in insurance policies with similar language, we have defined "accident" to mean "an undesigned contingency, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 523 (1986) (quotation and ellipsis omitted). Unless the alleged injury is the result of an accident, there is no "occurrence," and the Policies do not provide coverage. See Jespersen v. U.S. Fidelity & Guaranty Co., 131 N.H. 257, 260 (1988).

We have developed two tests to determine whether an insured's act was an accidental cause of injury – one subjective, the other objective. EnergyNorth Natural Gas v. Continental Ins. Co., 146 N.H. 156, 162 (2001). First, "an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results." Id. (quotation omitted). Second, an insured's intentional act cannot be accidental when it is so inherently injurious that "it cannot be performed without a certainty that

3

some injury will result." Id. (quotation omitted). Inherently injurious conduct need only be "certain to result in some injury, although not necessarily the particular alleged injury." Providence Mut. Fire Ins. Co. v. Scanlon, 138 N.H. 301, 306 (1994). The insured's intent is irrelevant to the inherently injurious test; rather, the analysis is objective and is "conducted from the standpoint of a reasonable person in the position of the insured." EnergyNorth Natural Gas, 146 N.H. at 162.

In their writ, the intervenors allege that Mutrie, "with the knowledge, information and belief" of her son's involvement in "a criminal enterprise as well as multiple different forms of criminal activity[,] . . . directly and indirectly and wantonly and recklessly supported and facilitated [his] criminal activity." They further allege that Mutrie's "reckless and wanton misconduct" was the "direct and proximate cause" of their injuries.

The intervenors' writ does not describe the specific "criminal enterprise" in which Mutrie's son was allegedly engaged. However, looking beyond the writ itself – as the intervenors urge us to do in this case – we observe that the search warrant that the intervenors reference in their writ was issued based upon probable cause that Mutrie's son was committing the crime of "Conspiracy to Possess Controlled Drugs with the Intent to Distribute." Cf. Happy House Amusement v. N. H. Ins. Co., 135 N.H. 719, 722 (1992) (in looking beyond writ in determining insurer's duty to defend, the court noted that plaintiff filed an affidavit in support of its argument); U. S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 152 (1983) (affirming trial court's decision that insurer had duty to defend where trial court looked "beyond the facts as alleged in the underlying writs").

Because the intervenors have not alleged that Mutrie intended to cause their specific injuries, but rather that her reckless conduct contributed to their harm, we analyze her conduct under the second test, and apply the inherently injurious standard. See EnergyNorth Natural Gas, 146 N.H. at 162; see also Sheehan v. Goriansky, 72 N.E. 2d 538, 542 (Mass. 1947) (finding that reckless conduct differs from intentional conduct because reckless wrongdoer intends only act, not harm which results from it). Thus, the dispositive inquiry here is whether a reasonable person in Mutrie's position would know that permitting her son to engage in illegal drug activity on her property would result in some injury, although not necessarily the injury that, in fact, occurred. See EnergyNorth Natural Gas, 146 N.H. at 162; Scanlon, 138 N.H. at 306.

Courts in other jurisdictions have recognized that the sale and distribution of drugs is intrinsically dangerous and harmful. See, e.g., United States v. Bullock, 632 F.3d 1004, 1016 (7th Cir. 2011) (observing that "[d]rug crimes are associated with dangerous and violent behavior"); United States v. Kenerson, 585 F.3d 389, 392 (7th Cir. 2009) ("[I]t is an unfortunate fact of life

that trade in controlled substances is dangerous for all involved."). As the United States District Court for the District of Nevada has observed:

> The distribution of illegal narcotics[,] without more, causes serious harm to society. Drug dealing also creates additional real dangers -- through crimes committed by addicts seeking to support their habits, through plain human suffering, and because people engaged in the sale of illegal substances sometimes commit or direct violent crimes in furtherance of their enterprises.

United States v. Woods, 2:08-cr-0181-HDM-LRL, 2008 U.S. Dist. LEXIS 66986, at *9 (D. Nev. Sept. 2, 2008) (quotation, ellipsis, and brackets omitted); see United States v. Askew, 403 F.3d 496, 508 (7th Cir. 2005) (observing that "[g]uns are among the tools of the drug trade" (quotation omitted)); United States v. Garcia, Criminal Action No. 07-CR-00529, 2007 U.S. Dist. LEXIS 72525, at *11 (E.D. Pa. Sept. 20, 2007) (observing that drug possession with the intent to distribute is "an inherently dangerous activity").

The intervenors allege that Mutrie knew of her son's involvement in dangerous drug activity, and that she "directly and indirectly and wantonly and recklessly supported and facilitated" it. Accordingly, we conclude that because a reasonable person in Mutrie's position would know that some harm would result from her alleged knowing, reckless, and wanton support and facilitation of her son's criminal drug activity, Mutrie's conduct was inherently injurious, and, therefore, cannot be considered accidental. Therefore, her conduct does not constitute an "occurrence" as is necessary to trigger coverage under the Policies.

The intervenors next argue that the trial court erred in failing to consider the entirety of the materials submitted by the parties on summary judgment. Specifically, the intervenors argue that the trial court erred by not considering Mutrie's denials of actual knowledge of her son's criminal activity. The intervenors, however, offer no evidence that the court failed to consider all of the materials submitted. Further, even when we consider the materials that the intervenors claim that the court ignored, we find no error. Mutrie's denials of her knowledge of her son's illegal drug activity, although highly relevant to the ultimate determination of her liability in the underlying lawsuit, are irrelevant to the narrow issue before the court: whether the intervenors' allegations bring their cause of action within the express terms of the Policies. See Jespersen, 131 N.H. at 261 (concluding that insured's ultimate liability in underlying suit is irrelevant to determining insurer's duty to defend). We note that, in the underlying litigation against Mutrie, the intervenors do not allege that Mutrie engaged in accidental or negligent conduct. Thus, the intervenors fail to show that the purportedly "overlooked" documents – evidencing Mutrie's statements that she had no knowledge of her son's conduct – give rise to a genuine issue of material fact in this declaratory judgment action.

5

Finally, the intervenors argue that Amica's motion for summary judgment did not satisfy the requirements of RSA 491:8-a, II (2010). However, not only did the intervenors fail to identify this issue in their notice of appeal, they have not demonstrated that they raised this issue before the trial court. Accordingly, we decline to address this argument. <u>See</u> <u>Bean v. Red Oak Prop. Mgmt.</u>, 151 N.H. 248, 250 (2004); <u>LaMontagne Builders v. Bowman Brook Purchase Group</u>, 150 N.H. 270, 276 (2003).

In sum, we hold that Mutrie's alleged "wanton" and "reckless" support and facilitation of her son's criminal activity is inherently injurious conduct which does not constitute an accidental "occurrence." Consequently, there is no coverage under the Policies for the intervenors' claims against Mutrie. Given our conclusion, we need not reach the issue raised by Amica in its cross-appeal.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.