NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2014-402

SCOTT KUKESH & a.

v.

BEVERLY P. MUTRIE, INDIVIDUALLY AND AS TRUSTEE OF THE BEVERLY P. MUTRIE REVOCABLE TRUST.

Argued: February 19, 2015
Opinion Issued: August 4, 2015

Boynton, Waldron, Doleac, Woodman & Scott, P.A., of Portsmouth (Christopher E. Grant on the brief and orally), for the plaintiffs.

Devine, Millimet & Branch, P.A., of Manchester (Donald L. Smith on the brief and orally), for the defendant.

BASSETT, J. The plaintiffs, Scott Kukesh, Eric Kulberg, Jeremiah Murphy, and Gregory Turner, appeal an order of the Superior Court (McHugh, J.) dismissing their claim that the defendant, Beverly P. Mutrie, individually and as trustee of the Beverly P. Mutrie Revocable Trust, engaged in reckless and wanton misconduct that resulted in their being shot and injured by her son. The plaintiffs argue that the trial court erred by: (1) not allowing their claim to proceed under the "reckless, wanton or willful acts of misconduct"

exception to RSA 507:8-h (2010) (amended 2013) (the "Firefighter's Rule"); (2) considering facts outside their writ; (3) denying them a full opportunity for discovery; and (4) failing to hold the defendant liable as a property owner for allowing criminal conduct to occur on her property. We affirm.

The following facts are derived from the trial court's orders or are otherwise drawn from the record. The plaintiffs are four police officers who served on a drug task force. The police had received reports that the defendant's 29-year-old son was engaged in illegal drug activity at a property in Greenland where he lived. The property is owned by the Beverly P. Mutrie Revocable Trust, of which the defendant is the trustee. On April 12, 2012, the plaintiffs were attempting to serve a search warrant on the defendant's son at the Greenland property. During the execution of the search warrant, the defendant's son shot and injured the plaintiffs. He then took his own life.

The plaintiffs sued the defendant, individually and in her capacity as trustee to recover for their injuries, alleging that she was responsible for their injuries because, "with the knowledge, information and belief" that her son was engaged in criminal activity, she "did recklessly and wantonly allow . . . criminal activity and conduct to take place at the subject property and otherwise directly and indirectly and wantonly and recklessly supported and facilitated [her son's] criminal activity at the subject property." The defendant filed a motion to dismiss, asserting that the plaintiffs' claim is barred by the Firefighter's Rule. See RSA 507:8-h. The Firefighter's Rule, which we adopted in England v. Tasker, 129 N.H. 467 (1987), prevents a police officer from recovering in a negligence action when the officer's injuries are caused by the same conduct that required the officer's official presence. Tasker, 129 N.H. at 468-72. The rule rests upon public policy considerations: Police officers and firefighters "are paid to confront crises and allay dangers created by an uncircumspect citizenry," and "it is fundamentally unfair to ask the citizen to compensate a public safety officer, already engaged at taxpayer expense, a second time for injuries sustained while performing the very service which he is paid to undertake for the citizen's benefit." Boulter v. Eli & Bessie Cohen Found., 166 N.H. 414, 418-19 (2014) (quotations omitted).

The legislature codified the Firefighter's Rule in 1993. See RSA 507:8-h; Boulter, 166 N.H. at 419. The statute in effect at the time the plaintiffs brought their claim provided:

> Firefighters, emergency medical technicians . . . police officers and other public safety officers shall have no cause of action for injuries arising from negligent conduct which created the particular occasion for the officer's official engagement. However, this section does not affect such officer's causes of action for unrelated negligent conduct occurring during the officer's official

2

engagement, or for other negligent conduct, or for reckless, wanton or willful acts of misconduct.

RSA 507:8-h, I. The defendant argued that, even assuming that all of the allegations in the plaintiffs' writ were true, they did not establish that the defendant's conduct fit within the exception in the statute precluding application of the rule for "reckless, wanton or willful acts of misconduct." Id. The defendant further contended that the plaintiffs could not show that her conduct caused their injuries. The plaintiffs objected, arguing that the defendant's conduct fit within the exception. In their objection, the plaintiffs alleged additional facts that had not been referenced in their writ, including assertions that, despite knowing that her son was engaged in illegal conduct, the defendant provided him with housing, cars, financial assistance — including the payment of his legal defense costs — and weapons.

Ruling on the motion to dismiss, the trial court noted that if the plaintiffs succeeded "in stating a claim for reckless and wanton conduct on the defendant's part . . . the Fire[fighter's] Rule [would] not be applicable." The trial court decided that it would, "in the interest of judicial economy," consider the allegations in the writ as well as the additional facts submitted by the parties because the plaintiffs' writ did not "contain any facts indicating how" the defendant "recklessly and wantonly supported and facilitated" her son's activities. Accepting the plaintiffs' allegations "as true and viewing them in the light most favorable to the plaintiffs," the trial court concluded that, although the plaintiffs' "allegations sufficiently establish[ed] the defendant's knowledge of her son's criminal activities and potentially violent behavior," they could not establish that she acted recklessly. The trial court explained that the allegations that the defendant had provided her son with housing, cars, and financial assistance, and also paid his legal defense costs were insufficient to support a finding of reckless or wanton conduct because that assistance did not "enable [her son] to shoot the police," nor did it "contribute to his decision to do so." Therefore, the trial court concluded, the defendant could not "reasonably be considered to have created or contributed to an unjustifiable risk of harm to others."

In regard to the allegation that the defendant provided her son with weapons despite knowing that he was engaged in criminal activity, the trial court explained that, although this allegation "could potentially establish a claim for reckless and wanton behavior," the plaintiffs did not "affirmatively allege that the defendant provided [her son] with weapons that were used to injure the plaintiffs." Rather, "they ma[d]e several speculative claims that the defendant may have provided her son with weapons that he in turn may have used to injure the police." The trial court observed that these claims were "not facts" but merely "assumptions."

3

The trial court scheduled an evidentiary hearing to provide the plaintiffs with an opportunity to present "sufficient affirmative evidence to demonstrate with reasonable probability that the defendant owned and provided guns to [her son], who then used those guns to injure the plaintiffs." The hearing was continued at the plaintiffs' request, and was not rescheduled. The defendant twice renewed her motion to dismiss. Ultimately, the trial court granted the defendant's motion, concluding that, because the plaintiffs had failed to identify any evidence that the defendant had owned and provided the gun that her son used to injure them, the plaintiffs could not show that the defendant engaged in reckless, wanton, or willful misconduct, as required to avoid dismissal under the Firefighter's Rule. This appeal followed.

The plaintiffs first argue that the trial court prevented them from "developing the evidence of the entire nature of the [defendant's] knowledge, information, support, facilitation, protection and communications with [her son] relating to the long-term criminal activity at the [p]roperty" when it: (1) denied their motion to compel discovery of the defendant's bank account records, documentation of the defendant's payment for her son's criminal defense, and information about her son's health care providers; and (2) granted the defendant's motion to quash a subpoena for the defendant's telephone records. The defendant responds that "the plaintiffs had ample opportunity to conduct discovery in this case," and that the information sought by the plaintiffs "was not reasonably calculated to lead to the discovery of admissible evidence, especially given the trial court's . . . finding that providing housing, cars and financial assistance could not support a finding of reckless, wanton or willful misconduct."

"We review a trial court's decisions on the management of discovery and the admissibility of evidence under an unsustainable exercise of discretion standard." Petition of Stompor, 165 N.H. 735, 738 (2013). "We will not disturb the trial court's order absent an unsustainable exercise of discretion." Id. To meet this standard, the plaintiffs must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of their case. Id.

We conclude that the plaintiffs fail to meet this burden. Neither the subpoenaed telephone records nor the information sought by the plaintiffs in their motion to compel can be found to be reasonably calculated to lead to the discovery of admissible evidence given the narrow issue then before the trial court — whether the plaintiffs could provide "sufficient affirmative evidence" to show that the defendant owned and provided the gun that her son used to injure the plaintiffs. See N.H. Ball Bearings v. Jackson, 158 N.H. 421, 429 (2009) ("Although discovery rules are to be given a broad and liberal interpretation, the trial court has discretion to determine the limits of discovery."). Accordingly, we cannot conclude that the trial court unsustainably exercised its discretion when it denied the plaintiffs' motion to

4

compel, or when it granted the defendant's motion to quash the plaintiffs' subpoena for telephone records.

The plaintiffs next contend that the trial court improperly converted the defendant's motion to dismiss into a motion for summary judgment by considering facts outside the writ. We disagree. The plaintiffs themselves submitted additional facts that were not contained in their writ. Consequently, the plaintiffs' challenge to the trial court's treatment of the pleadings is inconsistent with their submission of facts in addition to their writ. See Chasan v. Village District of Eastman, 128 N.H. 807, 813 (1986). "Having acquiesced in the procedure employed, the plaintiffs cannot now object to the form of the proceeding." Id. Moreover, the trial court did not treat the dismissal motion as a summary judgment motion. It simply considered additional factual allegations. Finally, as the trial court noted, it accepted the plaintiffs' affirmative allegations "as true and view[ed] them in the light most favorable to the plaintiffs." Thus, the plaintiffs received the benefit of the presumption to which they were entitled. See Plaisted v. LaBrie, 165 N.H. 194, 195 (2013) (stating standard of review for motion to dismiss). Accordingly, we find no error in the trial court's consideration of facts outside of the writ.

The plaintiffs next argue that the trial court erred when it dismissed their claim, concluding that it did not fit within the exception to the Firefighter's Rule for reckless, wanton, or willful misconduct. See RSA 507:8-h. In reviewing the trial court's grant of a motion to dismiss, we consider whether the plaintiffs' allegations — here, as supplemented by additional facts — are reasonably susceptible of a construction that would permit recovery. Chatman v. Brady, 162 N.H. 362, 365 (2011). We review the trial court's application of the law to the facts de novo. Id.

The plaintiffs contend that our decision in Amica Mutual Insurance Co. v. Mutrie, 167 N.H. 108 (2014), is dispositive of whether their claim fits within the exception to the Firefighter's Rule for "reckless, wanton or willful acts." See RSA 507:8-h. The plaintiffs assert that, when we concluded in Amica that the defendant's "alleged knowing, reckless, and wanton support and facilitation of her son's criminal drug activity . . . was inherently injurious," Amica, 167 N.H. at 114, we, in effect, also determined that the alleged acts of the defendant in the instant case were reckless. The defendant counters that Amica has no bearing on the outcome here because it addressed a distinct issue — whether the plaintiffs' writ alleged conduct that fit within the coverage language of the insurance policies purchased by the defendant. We agree with the defendant.

In Amica, we considered only the question of whether the plaintiffs had alleged facts that could be construed to be an "occurrence" as was required to trigger coverage under the terms of the subject insurance policies. See id. at 111. The insurance policies defined an "occurrence" as "an accident." Id. (quotations omitted). In their pleadings, the plaintiffs had alleged that the

defendant knew of her son's involvement in dangerous drug activity, and that she "directly and indirectly and wantonly and recklessly supported and facilitated" it. Id. at 113 (quotation omitted). Assuming the truth of the allegations in the writ for the purpose of determining coverage, we concluded that "because a reasonable person in [the defendant's] position would know that some harm would result from her alleged knowing, reckless, and wanton support and facilitation of her son's criminal drug activity, [the defendant's] conduct was inherently injurious, and, therefore, [could not] be considered accidental." Id. at 114. Therefore, we held that "her conduct [did] not constitute an 'occurrence' as is necessary to trigger coverage under the [p]olicies." Id. Moreover, in so ruling, we specifically stated that the facts relevant to the "ultimate determination of [the defendant's] liability" were "irrelevant to the narrow issue before the court." Id.; see Jespersen v. U.S. Fidelity & Guaranty Co., 131 N.H. 257, 261 (1988) (concluding that insured's ultimate liability in underlying suit is irrelevant to determining insurer's duty to defend). Thus, in Amica we accepted the plaintiffs' allegation that the defendant "directly and indirectly and wantonly and recklessly supported and facilitated" illegal drug activity. Amica, 167 N.H. at 113 (quotation omitted).

In contrast, here, we are asked to determine whether, based upon the assertion that the defendant provided her son with weapons, housing, cars, and financial assistance, the defendant engaged in reckless, wanton, or willful acts of misconduct. RSA 507:8-h; see Beane v. Dana S. Beane & Co., 160 N.H. 708, 711 (2010) (stating that when deciding motion to dismiss, the "trial court need not accept allegations in the writ that are merely conclusions of law" (quotation omitted)). In Amica, we did not decide — either explicitly or implicitly — the question now before us: whether the alleged conduct, if proven, could be deemed to fit within the exception to the Firefighter's Rule, thus allowing the plaintiffs to pursue their claim against the defendant. See RSA 507:8-h.

The plaintiffs argue that the defendant engaged in "reckless, wanton or willful acts of misconduct" when, knowing that her son was engaged in criminal activity, she provided him with housing, cars, weapons, and financial assistance. RSA 507:8-h. In support of their argument, the plaintiffs rely on Migdal v. Stamp, 132 N.H. 171 (1989). In that case, a 15-year-old child who lived with his parents was involuntarily hospitalized after he ransacked and vandalized the family home. Migdal, 132 N.H. at 173. The day after he was released from the hospital into his parents' custody, he took "approximately eight guns and 500 rounds of ammunition" from an unsecured gun cabinet in the home and fired them throughout the house. Id. He then shot and injured a police officer who responded to the scene. Id. The officer sued the parents for failing to properly supervise their child. Id. at 173-74. The parents moved for summary judgment, asserting the Firefighter's Rule as a defense. Id. at 174.

6

In Migdal, we observed that the Firefighter's Rule does not bar police officers from pursuing claims of reckless conduct — "conduct evincing 'disregard of or indifference to consequences under circumstances involving danger to life or safety of others, although no harm was intended.'" Id. at 176 (quoting Black's Law Dictionary 1142-43 (5th ed. 1979)). We concluded that the officer's allegations that the parents "failed to seek recommended medical treatment" for their son and allowed him access to "an array of firearms and ammunition," despite their knowledge that their son "was suffering from mental and emotional instabilities," had "exhibited dangerous propensities," and had ransacked and vandalized the house the day before, were "sufficient to establish a claim of reckless or wanton conduct." Id. We held, therefore, that the Firefighter's Rule did not bar the officer's claim against the parents. Id.

The plaintiffs contend that Migdal is "very similar" to this case, and that, therefore, the trial court erred when it concluded that the defendant's conduct did not fit within the exception to the Firefighter's Rule. The plaintiffs also assert that the trial court erred when it used the 2009 Black's Law Dictionary definition of "reckless" in its analysis, rather than the standard for recklessness set forth in Migdal. Compare Black's Law Dictionary 1385 (9th ed. 2009) (defining "reckless" as conduct "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious . . . disregard for or indifference to that risk"), with Migdal, 132 N.H. at 176. We are not convinced that there is a material difference between the two definitions; however, even assuming that a meaningful difference exists, it is of no consequence because we conclude that, under either definition, the defendant's alleged conduct does not fit within the exception to the Firefighter's Rule.

The differences between the factual circumstances in the present case and those in Migdal are readily apparent. Unlike the parents in Migdal whose minor son lived in their home, the defendant did not live with her 29-year-old son, and there is no allegation that the defendant exercised control over his actions. See id. at 173. Further, in Migdal, the parents' decision to leave their emotionally unstable minor son alone in the house with unsecured firearms directly resulted in their son gaining access to the weapon that was used to injure the plaintiff. See id. at 176. Thus, there was a causal connection between the parents' "disregard of or indifference to [the] consequences" of their actions and the officer's injuries. See id. (quotation omitted).

Here, in contrast, even assuming that the defendant knew of her son's involvement in criminal activity, the plaintiffs have not identified any evidence that the defendant's actions directly or indirectly resulted in their injuries. The plaintiffs have failed to identify evidence that supports their allegation that the defendant provided her son with any weapons during the time that he lived at the Greenland property, let alone the weapons that he had in his possession at the time of the shooting. Nonetheless, the plaintiffs maintain that the fact that

7

the police confiscated weapons and ammunition from the defendant's residence approximately two years before the shooting occurred is sufficient to show that the defendant provided her son with weapons. We are not persuaded. Instead, we agree with the trial court that the weapons "seizure does not allow the Court to logically conclude that any weapon in the possession of the defendant's son two years later must have been supplied to him by her." Indeed, the plaintiffs now concede that "the weapon used to shoot [them] was not" owned by the defendant.

Additionally, the plaintiffs' remaining factual allegations, even if proven, are insufficient to establish that the defendant's conduct caused the plaintiffs' injuries: as the trial court correctly observed, the alleged conduct "did not enable [the defendant's son] to shoot the police, nor did it contribute to his decision to do so." Indeed, given that the plaintiffs went to the Greenland property as a result of their suspicion that the defendant's son was engaged in criminal activity and had weapons in his possession, it is sheer speculation that the defendant could have prevented the plaintiffs' injuries had she refused to provide housing, cars, and financial assistance to her son.

Our ruling in Migdal that the plaintiffs' allegations were "sufficient to establish a claim of reckless and wanton conduct" against the parents, also implicitly turned on the fact that the parents owed a duty of care to the plaintiff. Migdal, 132 N.H. at 176; see Macie v. Helms, 156 N.H. 222, 224 (2007) ("The concepts of duty and legal causation are closely related and must be considered together." (quotation and brackets omitted)). Because they were responsible for their minor son's care and knew that he "was suffering from mental and emotional instabilities and exhibited dangerous propensities," Migdal, 132 N.H. at 176, the parents had a duty to prevent their son from causing bodily harm. See Restatement (Second) of Torts § 316 (1965) (parents have duty to "exercise reasonable care" in controlling minor child); id. at § 319 (Duty of Those in Charge of Person Having Dangerous Propensities). The scope of the parents' duty of care was defined by what risks, if any, were reasonably foreseeable under the particular circumstances. See Macie, 156 N.H. at 224. Thus, because it was reasonably foreseeable that leaving their emotionally unstable minor son alone in the house with "access to an array of dangerous firearms and ammunition" would result in their son shooting another person, the parents owed a duty of care to the plaintiff. Migdal, 132 N.H. at 173 (quotation omitted).

Here, however, the defendant did not owe a duty of care to the plaintiffs. Her son was an adult at the time of the shooting. Moreover, when the defendant provided her son with housing, cars, and financial assistance, she "could not reasonably have perceived that the series of events would occur and that [her son] would take the actions he did," causing the plaintiffs' eventual injury. Macie, 156 N.H. at 226; see Palsgraf v. Long Island R. Co., 162 N.E. 99, 100 (N.Y. 1928) (stating that a person only has a duty to prevent harm

8

resulting from risks that "reasonable vigilance" could perceive). Accordingly, given the differences between the circumstances in Migdal and the circumstances here, we disagree with the plaintiffs that Migdal requires us to conclude that their claim fits within the exception to the Firefighter's Rule.

The plaintiffs next argue that the defendant's duties arising out of her ownership of the Greenland property compel the conclusion that her alleged conduct fits within the reckless, wanton, or willful acts exception to the Firefighter's Rule. We disagree.

We have recognized three limited exceptions to the general rule that private citizens are not responsible for the unanticipated criminal acts of third parties: "(1) where there is a special relationship between the parties; (2) where special circumstances exist including situations where the defendant's acts create an especial temptation and opportunity for the criminal misconduct; or (3) where the duty is voluntarily assumed." Berry v. Watchtower Bible and Tract Society of New York, Inc., 152 N.H. 407, 412 (2005) (quotation omitted). The plaintiffs, citing Berry and Iannelli v. Burger King Corp., 145 N.H. 190 (2000), argue that the "special circumstances" exception applies here.

In Berry, we explicitly observed that the "special circumstances" exception does not give rise to individual liability in situations that the individual "did not create and over which [she] exercise[s] no control." Berry, 152 N.H. at 415. "Without sufficient control that would give rise to a duty, a private citizen should be immune from civil liability for failure to prevent [the] criminal acts of others." Id. In Iannelli, we held that a restaurant had a duty to protect patrons from an assault on its premises because it exercised independent and affirmative control over the property, and "unreasonably failed to alleviate" a foreseeable risk of harm. Iannelli, 145 N.H. at 194-95.

Berry and Iannelli are not controlling: here, the plaintiffs' injuries occurred on residential property, and there is no allegation that the defendant exercised control over her son's behavior. Further, as we observed above, the defendant's alleged provision of housing, cars, and financial assistance neither led to her son shooting the defendants, nor contributed to his decision to do so. Accordingly, we are not persuaded that the defendant's role as the owner of the property where her son lived constituted a "special circumstance" sufficient to give rise to a duty to prevent her son's criminal act.

Thus, because the plaintiffs were injured "while responding in [their] professional capacity to the very type of situation for which [they were] paid and trained to cope," Boulter, 166 N.H. at 420 (quotation omitted), and because they have failed to allege facts sufficient to establish that the defendant's alleged conduct was "reckless, wanton or willful," we hold that the trial court did not err when it concluded that the plaintiffs' claim was barred by the Firefighter's Rule. RSA 507:8-h.

9

Finally, we observe that we would significantly and improvidently expand the liability of parents for the acts of their adult children if we were to adopt the arguments advanced by the plaintiffs. Generally, parents are not liable for the acts of their adult children. See, e.g., Alioto v. Marnell, 520 N.E.2d 1284, 1286 (Mass. 1988) (finding no parental duty to supervise and control "emancipated adult son" who lived with parents); Reinert v. Dolezel, 383 N.W.2d 148, 151 (Mich. Ct. App. 1985) (parents' duty to control child ends when child becomes an adult); Hartsock v. Hartsock, 592 N.Y.S.2d 512, 513 (App. Div. 1993) ("Inasmuch as parents have no legal right to control their adult child's activities, they cannot be held liable for those activities . . . ."); cf. Restatement (Second) of Torts § 316 (stating that "[a] parent is under a duty to exercise reasonable care so to control his minor child" (emphasis added)). Imposing liability on parents based merely upon their provision of financial assistance or housing to their adult children would effectively force parents to choose between supporting an adult child for whatever reason and shielding themselves from liability by abandoning that child. "Families would lose the option of choosing how and where their . . . troubled adult child will be cared for, unless they are willing to risk full liability for their child's actions." Morgridge, Comment, When Does Parental Liability End?: Holding Parents Liable for the Acts of Their Adult Children, 22 Loy. U. Chi. L.J. 335, 356 (1990). "The danger of imposing liability on these parents is the possibility that society will punish parents who are trying to care for their troubled adult children." Id. We decline the plaintiffs' invitation to expand a parent's liability in such a manner.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.